No. 12,683.

STATE OF LOUISIANA VS. JOSEPH T. TIMBERLAKE.

Where it appears that there is no reasonable certainty or probability of procuring the attendance of an absent witness at the next term of the court, the denial of a motion for continuance will not be disturbed.

Where an absent witness, subpœnaed for defence, had testified on preliminary examination to a certain state of facts and could not, if present at the trial, have testified to the averments of fact set up in the motion for continuance without impeaching his own previous testimony, it is proper to conclude

State vs. Timberlake.

that were the witness present his evidence would be substantially the same as that on the preliminary examination, and as this was strongly against the accused, the latter was not prejudiced by his absence.

The State was entitled to offer the testimony of the absent witness, taken at the preliminary examination, on proof that he had left the parish and that his whereabouts and residence were unknown.

To justify relief to the accused, isolated passages of the trial judge's charge to the jury, objected to, must amount to a positive misstatement of the law.

APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Hunter, J.*

*M. J. Cunningham*, Attorney General, and *Phanor Breazeale*, District Attorney, for Plaintiff, Appellee.

*Robert P. Hunter* for Defendant, Appellant.

Argued and submitted January 15, 1898.
Opinion handed down February 21, 1898.

The opinion of the court was delivered by

BLANCHARD, J. The accused was indicted for the murder of M. W. Baillio, a constable, convicted and the death sentence passed upon him. He appeals, and his case is presented in five bills of exception taken to the rulings of the court on the trial below.

I.

On the day the prisoner was arraigned and pleaded to the indictment a motion was filed on his behalf for a change of *venue*, which came up for trial four days later and was overruled. Following the denial of the motion for change of *venue*, and on the same day, the case was fixed for trial one week later. Immediately thereupon the defendant filed an application, sworn to, for a subpœna for one J. W. Beaver, alleging him to be an important and material witness in his behalf, who had been present when the killing occurred, and that he was informed and believed him to be in the parish of Ouachita and in service on the United States snagboat Wagner, lying at or near the town of Columbia on the Ouachita river in Louisiana.

The application then proceeded to state at length what he expected to prove by the witness, the gist of which was that he (the accused)

had acted in self-defence in killing the deceased, who had rushed upon him, grabbed him and he was holding him with his left hand while with the other he was in the act of drawing his pistol, when affiant fired the shot that produced death.

The court granted this application and the subpœna issued for Beaver the same day, November 8, 1897. It was received by the sheriff of Ouachita parish the following day. On the 13th of November—four days later—he made return that he had been unable to serve the subpœna, because "failing to find the within named witness, Beaver, in the parish of Ouachita after diligent search, and from the best information I could obtain the present domicile of said witness is unknown."

When the case was called for trial on November 15, the accused objected to going to trial because of Beaver's absence, and filed a motion for continuance. This motion, besides the usual averments of materiality of testimony, due diligence, no other witness by which the facts can be proven, etc., set forth that the return of the sheriff of Ouachita parish, on the subpœna, did not show that inquiry had been made for the witness at the place which was designated; that because of the early day at which the case had been assigned for trial, time enough had not been given to enable the sheriff to make a sufficient search for him; that affiant, being confined in jail, had no opportunity to search for him; that he was absent without his knowledge or connivance; and that he expected to procure his attendance at the next term of court, etc. Then followed, substantially, the same statement of what he expected to prove by the witness as that made in the previous application for subpœna.

The motion for continuance was overruled on the ground that the whereabouts of the witness was unknown and the return showed he could not be found; and the trial judge further stated that his evidence, taken on the preliminary examination, was before the court, and disclosed that even if the witness were present he could not swear to the facts alleged in the motion for continuance, having already sworn to the contrary. He annexed the evidence taken on the preliminary examination as part of his reasons for refusing the motion to continue, and added that he believed the motion was made purely for delay.

The denial of the motion forms the subject of defendant's first bill of exception.

It appears that the witness, Beaver, was a transient person, not domiciliated in the parish where the crime was committed.

In the prisoner's application for the subpœna there is no statement or suggestion as to his place of residence, or that his residence is known. The application merely located him, on information and belief, in the parish of Ouachita.

The return of the sheriff of that parish shows that he was unable to serve the subpœna because, after diligent search, he had failed to find him within the parish; also that he was not a resident of the parish and that his domicile was unknown. Under the circumstances, there was no reasonable certainty, or even probability, that if the case had been continued the attendance of this witness could have been procured at the next term of the court. Such reasonable certainty or probability was necessary. State vs. Duffy, 39 La. An. 420; State vs. Morgan, 39 La. An. 214.

Besides, a perusal of the testimony of Beaver taken on the preliminary examination, both direct and under cross-examination by the accused, leaves no doubt on the mind that, had he been present at the trial, he could not have testified to the state of facts set up in the motion for continuance without impeaching his own testimony given at the preliminary examination. Had he testified to the averments of the motion for continuance, he would have stood self convicted of perjury committed at the preliminary examination. We must conclude, therefore, that had this witness been present at the trial, his evidence would have been, substantially, the same as that on the preliminary examination, and as this was strongly against the prisoner, he was not prejudiced by the absence of the witness at the time of trial.

## II.

The testimony of the witness Beaver, taken on the preliminary examination, having been offered by the prosecution in connection with the testimony of other witnesses for the State, the defence objected on the ground that no sufficient basis had been laid for its introduction; that it was not shown the witness was dead, or had left the State permanently, or could not be found, or was sick, etc. Also that the testimony had not been, when taken down, read over to the witness for correction, and that it was not signed by him. The objections were overruled and the deposition permitted to be

read to the jury.   To this ruling the second bill of exceptions was taken.

The judge who presided at the preliminary examination, and before whom Beaver's testimony was then taken, was the same judge before whom the case was subsequently tried.

Before offering the deposition, the State proved by the deputy clerk, who officiated at the preliminary examination and who took down the testimony of Beaver, that the witness had first been duly sworn, that the accused was present, that he cross-examined the witness, and that the whole deposition was fully and accurately taken down.   This was sufficient as to its genuineness and official character.   It is not required that the witness should sign it.   R. S. 1010; State vs. Allen, 37 An. 685.

On this showing the testimony was admissible on proof that the witness was absent and could not be found.   State vs. Harvey, 28 La. An. 105;  State vs. Douglas, 34 La. An. 523.

This proof was furnished by the application made a week before by the accused for a subpœna to issue to the witness in the parish of Ouachita, by the sheriff's return on the subpœna, that he could not be found in that parish and that his domicile was unknown, and by the application of the accused for the continuance of the case on the ground of the absence of this witness.

On the authority of State vs. Granville, 34 La. An. 1088; State vs. Jordan, Id. 1219; State vs. Coudier, 36 La. An. 291, and State vs. Allen, 37 La. An. 685, the prosecution would have been entitled to introduce the deposition even if the defendant had not sought Beaver as a witness, on proof that he had left the parish and that his whereabouts and residence were unknown.

### III AND IV.

The third and fourth bills of exception present objections to the charge of the judge relating to the law of manslaughter.   In overruling the objections, and as part of his reasons for so doing, the judge annexes to the bills his entire charge to the jury, which was in writing.

The contention of the defence is, that in the portions of the charge excepted to, the court below holds the prisoner to the standard of " a reasonable man."

After stating that a high degree of sudden, resentful feeling will

not alone palliate an act of homicide and reduce the crime from murder to manslaughter, the language of the court was: "It is essential that the excited and angry condition of the party committing the act, entitling him to a milder consideration of the law, should be superinduced by some insult, provocation or injury which would instantly produce in the minds of ordinary men situated as the prisoner was, the highest degree of exasperation." Then with reference to the time sufficient for passion to subside and reason to resume its sway, it was said: "The law assigns no limits within which cooling time may be said to take place. Every case must depend upon its circumstances, but a time within which an ordinary man in like circumstances would have cooled may be said to be a reasonable time."

Considering the charge as to manslaughter as a whole, it must be held a correct exposition of the law. The selection of passages here and there for criticism and animadversion is not favored, and a verdict will not be disturbed on a merely inaccurate or incomplete instruction, as embodied in the sentences excepted to, when, from the entire charge on that branch of the law, a correct view and explanation of the subject is given.

To justify relief, the isolated passages brought to our attention must amount to a positive misstatement of the law. State vs. Ardoin, 49 An. 1145; State vs. Ferguson, 37 An. 51; State vs. Porter, 35 An. 1159.

It seems that counsel for the accused, insisting that the charge as to manslaughter was too restricted, asked a special charge in reference thereto and handed the judge Wharton's Criminal Law, requesting him to read Sec. 480 thereof to the jury, as embodying what he wished charged them concerning the law of manslaughter. The judge complied with this request and read the entire section to the jury, charging them that it was the law.

After this it does not lie in the mouth of the accused to complain that the charge as given was too narrow and restricted.

From that portion of the charge relating to self-defence is singled out this expression: "The law requires mastery over our fears as well as control over our passions." This is objected to on the ground that if the law requires "control over our passions," it virtually sets aside the doctrine of manslaughter.

The expression used is taken from Desty's Amer. Crim. Law, Sec 128, pp. 383, 384.

The judge was instructing the jury as to the apprehension of danger on part of the accused, and proceeded to explain, after using the language quoted, that imaginary fears, without anything upon which to found them, can not serve as an excuse for taking human life.

His charge as to this is entirely unobjectionable, and so far as the expression " control over our passions " is concerned, the law of manslaughter, the killing of another in the heat of passion, was sufficiently and accurately expounded to the jury in another part of the charge.

## V.

The fifth bill was taken to the refusal of the Court a qua to grant a new trial asked for on two grounds—first, that the verdict was contrary to the law and evidence, and, second, that the jury was overawed by the large crowds in attendance at the trial, all of whom were opposed to the prisoner and some of whom applauded the District Attorney when he concluded the argument for the State, thereby influencing the jury to the prejudice of the accused.

Testimony was taken on this motion and is found in the record. The question presented is one of fact. The trial judge, in his reasons for overruling the application for a new trial, declares that the accused had obtained a fair trial by an honest jury, influenced alone by a desire to do their duty; that the nearest juror lived about fifteen miles from the county seat (Alexandria); and that he was satisfied none of the jury were influenced by any prejudice which may have existed in Alexandria. The evidence taken on the motion does not satisfy us the judge erred in overruling it. Great reliance is placed by the law upon his discretion in such matters.

The manifestation of approval at the close of the argument for the prosecution was inconsiderable, and was quickly and sternly rebuked and suppressed by the judge, who then turned to the jury and directed them to disregard any and all marks of approval or disapproval, and to determine the case solely from the law and evidence.

The sentence and judgement appealed from stand affirmed.