We do not think their contentions on this subject well grounded.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is, hereby, affirmed.

The opinion and decree herein are intended to apply solely to the exemption claimed on the particular property on which the assessment attacked was laid, and as to conditions now existing.

(33 South. 618.)

No. 14,525.

STATE v. KLINE et al.*

(Jan. 5, 1903.)

CRIMINAL LAW—OBJECTIONS TO JURISDICTION—VENUE OF CRIME — APPEAL — EVIDENCE—NONRESIDENT WITNESSES — ARREST OF JUDGMENT.

1. Where the jurisdiction of the district court in a criminal case is denied upon the ground that the crime was not committed within its territorial limits or within the state, the issue is one of fact, which can only be passed upon when the entire evidence in the case has been adduced. The district court cannot be required to decide the question at an early stage upon the testimony of two or more witnesses, even if they be witnesses for the state, and testify favorably for the accused.

2. The place of the commission of a crime is a matter of fact, which has to be submitted to and passed upon by the jury upon the entire evidence adduced under a charge from the judge. If the Supreme Court could pass upon that issue at all after a finding adverse to the accused (State v. Tanner, 38 La. Ann. 307), it could not do so upon fragmentary evidence.

3. The accused cannot object to the reading of the testimony of state witnesses, taken before the judge of the First city criminal court of New Orleans, acting as a committing magistrate, when the witnesses are absent from this state at the time of the trial of the case, and are permanent nonresidents, simply because of alleged irregularity in the time and place of taking the testimony, when he at that time cross-examined the witnesses, and afterwards himself sought to utilize the testimony in support of a plea to the jurisdiction.

4. The written testimony of witnesses permanently absent from this state, taken before the judge of the First city criminal court of New Orleans, acting as a committing magistrate, is receivable in evidence on the trial of the case itself, when the accused was present at the taking of the testimony, and cross-examined witnesses. This has been the jurisprudence for many years in Louisiana, and the situation has not been changed by the introduction into article 9 of the Constitution of 1898 of the words "in every instance."

5. Motions in arrest of judgment can be granted only for errors patent on the face of the record. A defect which appears only by the aid of testimony cannot be the subject of such a motion. State v. Green, 36 La. Ann. 185; State v. White, 37 La. Ann. 172; State v. Roland, 38 La. Ann. 18; State v. Pete, 3 South. 284, 39 La. Ann. 1095.

(Syllabus by the Court.)

Appeal from criminal district court, parish of Orleans; Frank D. Chrétien, Judge.

George I. Kline and Robert L. West were convicted of larceny, and appeal. Affirmed. Removed by error to the Supreme Court of the United States.

Henriques & Dunn (Henry L. Lazarus, of counsel), for appellants. Walter Guion, Atty. Gen., J. Ward Gurley, Dist. Atty., Samuel A. Montgomery, Asst. Dist. Atty., and Henry Mooney, Asst. Dist. Atty. (Lewis Guion, of counsel), for the State.

Statement of the Case.

NICHOLLS, C. J. The two defendants were found guilty, and each sentenced to suffer imprisonment in the State Penitentiary for a term of three years, and to pay the costs of prosecution. They appealed.

The information upon which they were tried charged the crime to have been committed on the 4th of January, 1902, in the parish of Orleans, and within the jurisdiction of the criminal district court for the parish

---

*Rehearing denied February 6, 1903.

of Orleans; that the property stolen belonged to Paul G. Thebaud, and when stolen they were in the parish of Orleans, and within the jurisdiction of the criminal district court.

The first bill of exception submitted to us is to the action of the court in respect to an exception which they had filed to the jurisdiction of the court. In this exception they set out that the court ought not to take cognizance of the cause, because the record and evidence taken before Thomas M. Gill, judge of the First city criminal court for the parish of Orleans, on February 19, 1902, affirmatively showed that the criminal district court had no jurisdiction over the accused, nor over the matters alleged, charged, and specified in the information, because: (1) On the examination thereof before the said First city criminal court the witness Paul G. Thebaud, being sworn on behalf of the state, did testify that the alleged larceny, as therein set forth, was committed in the state of New York, and not within the jurisdiction of the criminal district court.

(2) Because the said Paul G. Thebaud is alleged in the information to be the owner of the property alleged to have been stolen.

(3) Because, under the law, where property stolen in another state is brought to this state, if even by the thief, the crime of larceny is not committed in the state of Louisiana.

(4) Because the said Paul G. Thebaud, in his testimony before the First city criminal court, and which was on file in the criminal district court and part of case No. 31,923, then before the latter court, testified that the accused were not the persons who committed the alleged larceny, but, on the contrary, that the larceny of his goods and chattels, as charged in the information, was committed in the state of New York, and by one Edward Kern, who was then in his employ.

(5) For the further reason that if a larceny was committed in the state of New York, and stolen goods were brought into this state, the courts of Louisiana have no jurisdiction either over the person or the subject-matter of the offense; that the jurisdiction over the offense is in another tribunal, to wit, the court or courts of the state of New York.

The court made the following ruling on the exception:

"On the preliminary examination of the charge made against Robert L. West and George I. Kline, of grand larceny, before the First city criminal court, certain parties were examined by the judge of that court in order to determine whether there was such a case as would justify the sending of the parties to the proper tribunal to be tried. After an investigation the case was sent to the criminal court, to be tried according to law. Subsequently—that is to say, on the 25th of February, 1902—an information was filed against the two accused for grand larceny. They were arraigned, and, upon their arraignment, leave was asked to file any plea that the accused might desire thereafter. Subsequently a plea to the jurisdiction of the court was filed. Upon the trial of this plea the accused, through their counsel, proposed to offer in evidence the testimony of the witnesses mentioned in the offer made by them, upon which to rest the plea which they had filed on the ground that the testimony formed part of the record of the criminal district court.

"The testimony taken in the lower court is not testimony in the criminal district court unless offered anew, and only under certain contingencies provided by law can it be used at all. The state charges in the information a certain crime against the accused, which must be established by the state upon proper evidence, and what evidence will be introduced can only be disclosed upon the trial of the case. I do not consider that the testimony taken in the lower court is testimony in this court, and part of the record in the district court. It will become part of the record only after offer, and it can be offered and used only under certain circumstances. I therefore maintain the objection of the state, as I am of the opinion that the testimony offered, and intended to be used as the basis to the plea to the jurisdiction, is not testimony, and cannot be considered by the court, unless it be offered under the provisions of law now existing, governing such offers. The court further rules that, the plea having been submitted to the court, the same is referred to the merits, to be there tried after testimony shall have been offered, in order to determine from that testimony whether the court has jurisdiction of the subject-matter or not.

"Counsel embodied in their bill, as part

thereof, the testimony of Paul G. Thebaud, T. E. Manners, alias Kern, and the witness Sergeant John F. Kelly of New York City."

It appears that later, and during the trial of the case, the testimony of Paul G. Thebaud and Edward Kern, alias Manners, which had been taken in the First city criminal court, was permitted to be read to the jury over the objections made by the defendants thereto, as shown by their bill of exception taken in relation to the same, and that, after this testimony had been read, defendants again excepted to the jurisdiction, but that, the action of the court being deemed by them prejudicial and illegal, they excepted, and filed a second bill of exception on this subject of jurisdiction. In their bill they aver that the testimony of the witness Paul G. Thebaud showed that the jewelry charged to have been stolen from him had been stolen in the city of New York, and that the perpetrator of the crime was Edward Kern, Jr., and not the defendants, and furthermore showed that the said Edward Kern, Jr., alias Manners, was in his employ at the time that he committed said offense in the state of New York; that he did not know the accused; that he had never seen them, and that the person who committed the larceny was Edward Kern, Jr.; that the larceny was committed out of the jurisdiction of the criminal district court, as was evidenced by said testimony.

The action of the court upon defendants' plea, and its reasons for the same, are set out at the foot of the bill of exception, as follows:

"After the state had read the deposition of Paul G. Thebaud and Edward Kern, otherwise known as Manners, taken before the First city criminal court, the accused filed a plea to the jurisdiction of the criminal district court, founded upon the ground that the jewelry charged to have been stolen from him by the accused at the bar had been stolen from him in the state of New York by Edward Kern, Jr., in December, 1901. The state has not closed its case, and whether it will establish hereafter the proper venue can only be determined by the testimony to be offered. If, instead of West and Kline being charged to have committed the offense, the information had charged Edward Kern, Jr., with the offense, and the asportation was shown to have taken place in New York, there would be no doubt as to the force of the plea filed, for our law does not recognize continuous asportation of property, and, the taking in that case having been in New York, the offense would not exist in this state by the mere transportation of the property from the place of taking to this place. But the information does not charge Edward Kern, Jr.. or Manners, with the crime, but George I. Kline and Robert L. West.

"It is elementary in law that a thief may steal from a thief; the dominion over the property by the first thief being considered, by fiction, as that of the owner.

"West and Kline can therefore be charged with having stolen property from P. G. Thebaud, in this city, on the 14th of January, 1902, notwithstanding that the property had in December, 1901, been stolen by Kern, otherwise known as Manners, from Thebaud, in New York. If the property stolen be proved to have been stolen from Kern, in this city, on the 14th of January, 1902, the charge would hold, under the law, notwithstanding the fact that the property had on December, 1901, been stolen by Kern from Thebaud in the state of New York.

"The accused on a previous day filed a plea to the jurisdiction of the court, founded on the same ground, which plea had been referred by the court to the merits of this case. Both pleas are now considered by the court, and, for the reasons given, they are overruled; reserving to the accused the right to file pleas to the jurisdiction of the court hereafter, should occasion demand or justify it."

Counsel embodied in the bill of exception the testimony of Thebaud and Manners, taken before the First city criminal court.

The third bill of exceptions, to which we direct our attention, is one in which it is recited that, a jury having been called and impaneled to try the case, the state called two witnesses to the witness stand, for the purpose of proving that one Paul G. Thebaud, a witness whose testimony was taken at the preliminary examination, was absent from the state, and his testimony was then taken; that said testimony was offered on behalf of the state for the purpose of laying the foundation for the introduction of the evidence of Paul G. Thebaud, taken on

the preliminary examination before the First city criminal court; that at the time when said testimony was heard the assistant district attorney, representing the state, announced to the court as follows:

"Now, if the court please, we have shown by two witnesses that Mr. Thebaud is absent from the state; and I submit that sufficient showing has been made, under the law, and that we have now the right to read the testimony taken in the lower court. I now propose to read the testimony of Mr. Thebaud."

To which offer counsel for accused objected on the following grounds: "Because nowhere in this evidence, which was offered to lay a foundation for the introduction of testimony taken or alleged to be taken before the committing magistrate of the witness Thebaud, is it shown that he is at this time out of the city of New Orleans this day, nor is there any evidence offered on behalf of the state to prove affirmatively that the witness named Thebaud is permanently absent from the state of Louisiana."

Counsel for defendants stated that they had other objections to urge to the introduction of this testimony, which could not be urged at that time, unless the court considered that the proper foundation had been laid. That the court stated, "Upon the evidence offered, I will allow the testimony offered." That counsel then asked the court whether it considered that sufficient foundation had been laid, to which the court answered, "Yes." That to the ruling of the court at that time made, permitting the testimony of Paul G. Thebaud to be read, counsel excepted, and tendered a bill of exceptions, to which the judge affixed his signature. Counsel embodied in the bill of exceptions the testimony offered by the state to lay the foundation for the introduction of Thebaud's testimony taken before the First city criminal court.

The fourth bill of exceptions, to which our attention is called, is one in which it is recited that on the trial of the case, after the court had ruled that the testimony of Paul G. Thebaud could be read to the jury, and before the reading thereof, counsel for defendants called several named witnesses to the stand for the purpose of proving that the examination before the First city criminal court was fixed in said court for the 25th

day of January, 1902, but that prior to said day of examination, and on the 21st of January, 1902, the said defendants, without notice, were taken to the First city criminal court, and, when in said court, announcement was made by the judge of said court that the said defendants were called before the court for the purpose of hearing the testimony of one Paul G. Thebaud, a witness on behalf of the state; that at that time counsel for defendants entered the following objections to the hearing of said testimony:

"That the said Paul G. Thebaud was not a prisoner in jail; that he had not asked the court that his testimony be heard; that there was no evidence before the court that he had asked to be heard as a witness in this case; that, if the proceeding was had under the Acts of 1896, then that defendants object because said Paul G. Thebaud was not in jail; that no service of notice to hear the testimony of said witness Thebaud had been served on the defendants; that the cause having been fixed for examination for the 25th day of January, 1902, and it not being shown that it was absolutely necessary that the testimony of said Thebaud should be heard at this time, counsel for defendants object to the hearing thereof.

"Furthermore, that the hearing of said testimony of Thebaud before the First city criminal court was irregular and not warranted by law; that there was no evidence to show that said witness had asked that his testimony be taken in advance of the preliminary examination, nor was any notice served upon the accused of the intention to take the testimony of said witness prior to the examination of this case, which had been fixed for the 25th of January, 1902.

"That no application was made to the district attorney for the parish of Orleans, or to any assistant district attorney, that the witness desired to be heard in advance of the preliminary examination; that, as the preliminary examination had been fixed for the 25th, the hearing of this testimony was irregular, unwarranted, and not in accordance with law.

"That defendants further objected to the reading of the testimony of Thebaud, a witness for the state, who was claimed to be absent from the state, because the reading of this testimony to the jury was in violation

of article 9 of the Constitution of the State of Louisiana of 1898, which prescribed that 'the accused in every instance shall have the right to be confronted by the witnesses against him'; that the reading of said testimony as taken before the First city criminal court on the preliminary examination was in violation of said constitutional provision.

"Furthermore, that the reading of said testimony of said alleged absent witness was not only violative of the Constitution of the State of Louisiana, but is also violative of the Constitution of the United States and the sixth amendment of the Constitution, as well as the fourteenth amendment of the Constitution of the United States; also because it was not shown that the witness Thebaud was dead, insane, or sick, nor had it been shown that the witness was absent by the procurement of the defendants, or either of them; that the reading of said testimony would be in violation of their constitutional rights.

"That they were permitted to take the testimony of several witnesses in support of these objections, and that they embodied said testimony in their bill of exceptions; that the court ruled as to said objections as follows:

"'The accused, through their counsel, object to the reading of the testimony of Paul G. Thebaud, taken before the First city criminal court on grounds:

"'That Mr. Paul G. Thebaud was not, at the time that his testimony was taken in the First city criminal court, a prisoner in jail; that he had not asked the court that his testimony should be heard; that there was no evidence before the court to show that he had asked to be heard as a witness in the case; that the defendants, under the law, were entitled to two days' notice, if residents of the parish of Orleans, of a service on them to hear the giving of the testimony, and that the law provides, if they be nonresidents, that they are entitled to ten days' notice; that the accused are nonresidents of this parish; that they had at no time received notice that they were to appear on the day fixed to take the deposition of Thebaud, for the purpose of hearing the taking of his testimony; that there was nothing in the record to show any applica-

tion was made to the court by the witness to have his deposition taken; and that no notice was given the defendant and district attorney by the witness of any desire on his part to have his testimony taken.

"'(2) That the testimony is not admissible in evidence, and cannot be read to the jury, for the further reason that they are entitled to be confronted with the witnesses against them in every instance, under article 9 of the Constitution of 1898, and that they claim that privilege granted them by law; and at this time the further objection is made that the testimony cannot be read, because, under article 9 of the Constitution of the United States, and the fourteenth amendment of the Constitution of the United States, the accused are entitled to be confronted with their witnesses at all times, and they claim this right at present as to the reading of the testimony, on the ground that said testimony cannot be read, and that they have to be confronted by their witnesses, unless it be shown that the witness is dead, insane, sick, or absent by the procurement of the defendant or his counsel.

"'The first objections are based upon the provisions of Act No. 124 of 1896. This act was intended and passed to give relief to a class of people who previously, when detained in jail as material witnesses, had to await the trial of the case for their release, when unable to furnish security for their appearance. It gives them a privilege which the state cannot deny them, and which limits their confinement to as short a period as is compatible with the proper administration of criminal justice, and does away with the cruel wrongs that those unable to furnish bonds are made to suffer. The act has reference to this class of witnesses alone, and its provisions cannot be extended to any other class of witnesses not within its province.

"'Mr. Thebaud was not a detained witness, and therefore the notices required by the act are not required of him. The objections raised by the reading of his deposition on that ground is not, therefore, well taken, and is overruled. But it is objected that the accused had no previous notice of the taking of the deposition of Mr. Thebaud, that they were entitled to some no-

tice, and that, they having objected to the taking of the deposition at the time, the same should not be read to the jury.

" 'By article 140 of the Constitution of 1898 the judges of the city criminal courts are given jurisdiction as committing magistrates, with authority to bail or discharge. They therefore had the power not only to examine whether the state had made a sufficient showing to send the accused to a higher tribunal for trial, but, in line with that power, they had the right to take the deposition of any material witness whenever, in their judgment, necessity demanded such exercise of power, to prevent a failure of justice.

" 'The act providing for the organization of these courts does not direct that any notice should be given the accused before the taking of the deposition of a witness for the state. Under it these witnesses may be examined at any time, provided that they be not deprived of those rights secured to them by article 9 of the Constitution of 1898, of being confronted with the witnesses against them, or the right to defend themselves, to have the assistance of counsel, to have compulsory process for obtaining witnesses in their favor. Of none of these rights have they been deprived. They were confronted with the witness, and they were ably represented by leading members of the bar. They suffered no injury, and the objection must be overruled.

" 'The last objection is that they are entitled to be confronted with the witness at the present trial, and that, under article 9 of the Constitution, they cannot be deprived of that right. Article 9 of the present Constitution of 1898 differs from that of 1879 in having the words "in every instance" added. Article 8 of the Constitution of 1879, among other things, provides:

" ' "In all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation and to be confronted with the witnesses against him."

" 'To this the three words "in every instance" are added, under article 9 of the Constitution of, 1898. Counsel argues that this means that in every stage of the proceeding, in so far as Act No. 124 of the Acts of 1896 provides for the reading of testimony of witnesses permanently absent from the state, it is in conflict with the above-quoted article of the Constitution, and therefore inoperative. The words "in every instance" do not mean, in my opinion, in every stage of the proceedings, but, rather, in every case whenever a witness is to be examined. It only emphasizes the right to be confronted, and otherwise adds no conditions to the provisions of article 9 of the Constitution of 1898. Whatever may be my own private or personal opinion as to the right of reading testimony of witnesses permanently absent from the state without the procurement of the party against whom it is directed may be, the question has entered the domain of stare decisis, and, under the well-formulated decisions of our Supreme Court on that point, I hold the objections not well founded, and I allow the testimony to be read.'

"To the ruling of the court counsel representing the accused reserved their bill of exceptions, and makes a note of his objections now, and makes part of his bill the testimony, together with the judge's reasons for overruling the objections herein.

"And be it further remembered that, after the overruling of the objections herein, the court permitted the testimony of said Paul G. Thebaud, taken in the First city criminal court, to be read to the jury, and offered against these defendants, to all of which counsel excepted, and now tenders this, his bill of exceptions, for signature, and prays that the same be made part of the record herein."

The fifth bill of exceptions which we notice is that taken to the refusal of the court to give the following special instruction:

"The court instructs the jury that their personal opinions as to the facts not proven cannot be considered as the basis of their verdict. The jury may believe, as men, that certain facts exist, but as jurors they can only act upon the evidence introduced on the trial; and from that evidence, and that evidence alone, the jury must form their verdict, unaided, unassisted, and uninfluenced by any opinion or presumptions not founded upon the testimony."

The reason assigned by the court for declining to give this special instruction was that the general charge which it had given covered it in every respect.

The sixth bill of exceptions we refer to is one taken to a certain question propounded by the state on cross-examination of the witness George I. Kline, one of the defendants, then on the stand as a witness on his own behalf, and to the answers given by said witness which are embodied in the bill. Defendants objected to said question and answer thereto on the ground that the state should confine itself to what was brought out in direct examination of the witness, or what was ultimately connected with it; that the question asked, and the answer attempted to be elicited from the witness, were foreign to the direct examination, and were in no way connected with the same.

The court overruled the objections, and permitted the question to be asked and answered, on the ground that the question was proper and closely connected with the testimony given by the defendant, and was admitted; it being a part of the transaction narrated by the witness himself.

The seventh bill of exceptions was to a sentence in the court's charge to the jury, in which it said:

"When goods stolen are very shortly afterwards found in the possession of a man who is unable satisfactorily to show by evidence in what manner he came by them, the presumption is that he is the thief."

Defendants excepted that said portion of the general charge was not warranted by the evidence offered on the trial, and it was misleading and not a correct exposition of the law; that the evidence which was found in the record did not warrant the court in delivering said charge.

In reference to this the court said: "The evidence showed that the property was in possession of the accused shortly after it had been stolen from the St. Charles Hotel. The evidence on behalf of the state was circumstantial. I refer to the charge given by me, as a part of this bill."

Defendants filed a motion and two supplemental motions for a new trial. There is only one of the grounds assigned which needs to be alluded to. In one of the supplemental motions, defendants refer to the fact that on the trial of the cause the testimony of Edward Kern, Jr., taken before the First city criminal court on the preliminary examination, was read to the jury (the witness being at that time absent from the state), and that that testimony contributed to their conviction; that at the time of the trial Kern was a prisoner in jail in New York, and held for grand larceny committed by him in the city of New York on the 29th of December, of numerous articles belonging to Paul G. Thebaud; that he pleaded guilty to the charge, and was sentenced to be imprisoned in the state penitentiary for the term of four years; that said Thebaud was the same person whose property defendants had been charged, in the information filed against them in the criminal district court, with having stolen; and that the property which Kern had been convicted of stealing was the identical property which they themselves had been convicted of stealing. They further claimed that since the trial of their case they had discovered new evidence, of which they were ignorant, and could not have discovered; that this consisted of an affidavit of Edward Kern, Jr., which they made part of their motion, to the effect that he authorized George I. Kline, one of the defendants, to take possession of and move all of the property which he had (the property alleged to have been stolen) in room No. 859 of the St. Charles Hotel, and to meet him at Atlanta; that he would testify to that effect.

The district judge, in refusing the new trial, said that the points raised were identically the same that had been ruled upon by the court on the trial, with the exception of a prayer for a new trial on the ground of newly discovered evidence. In respect to this the court said that the accused, on their trial, testified that Kern authorized them to take the property out of the St. Charles Hotel, and therefore quoad them the evidence was not newly discovered: that on the preliminary examination Kern testified that he did not know the accused; that he had not spoken to them; that he may have seen one of them before, but did not authorize him, or either of them, to take the goods. He therefore either perjured himself in the lower court, or he was perjuring himself in the affidavit which was offered in support of the new trial. Besides, there was no proof that even if the testimony of Kern was admissible, or could carry weight, and a new trial was granted, he could be procured as a witness.

It has been shown by the evidence that he had been sentenced to hard labor in the penitentiary in the state of New York for four years. The probability, therefore, of getting him as a witness, was not good. Defendants filed a motion in arrest of judgment, declaring that the grounds assigned were apparent on the face of the record. The matters assigned in the motion were matters already ruled upon by the lower court, and covered by bills of exception, the incorrectness of which defendants attempted to support by a recapitulation of the testimony which was set out in the different bills of exception. The testimony in the record was "not apparent on the face of the record," for the purpose of a motion in arrest of judgment. State v. Tanner, 38 La. Ann. 307. The court overruled the motion.

### Opinion.

Defendants urge want of jurisdiction over this case. It is not claimed that, if larceny of the goods mentioned occurred in Louisiana, it was committed outside of the parish of Orleans, and beyond the territorial jurisdiction of the criminal district court, nor that that court had not jurisdiction over the crime of larceny in the state of Louisiana, and therefore that the state, and no court of the state, have cognizance of the crime. It is conceded by the state that, if the crime sought to be tried occurred in the state of New York, it has no authority, nor is it charged with the duty of prosecuting it. That issue is not in this case. The state insists and charges that there was larceny of the goods within its borders.

That is a matter of fact, blended in this case with law, which has to be submitted to and passed upon by a jury upon evidence adduced before it under a charge from the judge. State v. Foster, 8 La. Ann. 290, 58 Am. Dec. 678; State v. Tanner, 38 La. Ann. 307; State v. Harris, 107 La. 196, 31 South. 646; State v. Starks, 42 La. Ann. 315, 7 South. 540.

Appellants endeavored to have the question disposed of by the judge under a motion twice made before the evidence was closed; the motions being based upon the fact that at the time they were made two or three witnesses who had been introduced by the state had given testimony, as they claimed, which negatived the fact that the larceny had been committed in Louisiana, and showed affirmatively that it had been committed in the city of New York.

The court refused to pass upon the motions at that time, and under those conditions; reserving to the defendants the right of renewing the motions later, after the evidence was closed.

Defendants did not avail themselves of the privilege.

The action of the court in the matter was correct. It could not undertake to pass upon the question on fragmentary testimony, however strong it may have been, and even though the testimony came from state witnesses. Testimony taken subsequently might completely overturn that of those particular witnesses.

The necessities of the case do not require us to say or decide whether the defendants would have been entitled to call for a decision by the court of the question of jurisdiction, if the call had been made after the evidence was closed, and before the jury had retired for a verdict, for no demand was made for a ruling at that time. Had the court been called upon to do so and acted upon it, it would have withdrawn the prosecution entirely from the jury, and passed, itself, upon both the law and the facts of the case.

As matters took shape, the case went to the jury, which rendered a verdict of guilty. The court overruled the motion for a new trial, and, in so doing, held that it was justified by both law and facts. We are in no position to hold that the jury and the court erred, for they acted upon the entire evidence adduced, while we have before us only so much of the evidence as is embodied in the bill of exceptions.

We cannot act upon a fragment of the testimony. See State v. Nash, 46 La. Ann. 214, 14 South. 607; State v. Foster, 8 La. Ann. 292, 58 Am. Dec. 678; State v. Tanner, 38 La. Ann. 307; State v. Harris, 107 La. 196, 31 South. 646; State v. Starks, 42 La. Ann. 315, 7 South. 540.

The defendants contend that the case was submitted to the jury upon illegal testimony.

The testimony complained of is that of Thebaud and Manners, taken in the First city criminal court before the case was sent

to the criminal district court for trial. It is the same testimony which defendants have embodied in the bill of exception taken by them to the rulings of the court on the subject of jurisdiction, and which they seek to utilize for the purpose of defeating the prosecution.

It is urged broadly by appellants that they were entitled, under article 9 of the Constitution of 1898, to have in every case, and under all circumstances, the witnesses themselves present in court on the final trial, so that they could then and there confront them, and that their testimony taken before the judge of the city court, acting as a committing magistrate, was inadmissible.

It is not pretended that, as a fact, the accused were not present when that testimony was taken. The evidence which has been brought up discloses that they were present at the examination, and cross-examined the witnesses. They maintain, however, that that examination, at the time and place it was made, was irregular and illegal; that it was made without proper notice to them, and that it was not justified by the terms of Act No. 124 of 1896, under which it was taken; that their presence at that examination was under duress, and their participation therein was over their objections. We do not think the defendants are in a position to object to the testimony taken before the First city criminal court simply on account of the time and place at which it was taken, as they themselves have made use of that testimony in support of their plea to the jurisdiction. The testimony is not pretended to have been taken under the act of 1896, but under the general powers of the judge of that court as a committing magistrate, under articles 140 and 96 of the Constitution, and section 1010 of the Revised Statutes. The reasons assigned by the district judge for his rulings, we think, justify his course.

Assuming it to have been properly taken, defendants contend that there was not sufficient evidence before the court at the time of the trial that the witnesses were then out of the jurisdiction of the court, or out of the state, and, if out of the state, that it had not been shown that their absence was by procurement of the defendants; that they were insane or physically disabled from attending court.

We think the evidence adduced sufficiently showed the absence of these witnesses from the state, beyond the reach of process, at the time of trial, and that there was no reasonable probability that they would return to Louisiana. Thebaud is shown by his own testimony, brought up in one of defendants' bills of exception, to reside permanently in the city of New York, and he testified that he did not expect to return to this state. Jacobi v. State (Ala.) 32 South. 158. His testimony was supplemented by that of others. Kern, alias Manners, was shown to be in the penitentiary in New York, under a four-year sentence.

The next position of the defendants is that this testimony was inadmissible, even if it had been regularly taken, and even if it had been shown that Thebaud and Manners were permanently absent from the state, inasmuch as article 9 of the Constitution guarantied an accused party, "in every instance," the "right to be confronted with the witnesses against him." On this point counsel of appellants make the following statement in their brief:

"The court will notice that all prior Constitutions to the one now in force in this state contain no such radical and far-reaching provisions as that of article 9 of the Bill of Rights of the Constitution of 1898, which contains the sacramental provision that 'the accused in every instance shall have the right to be confronted with the witnesses against him,' and for the first time is this court called upon to determine that question under the present Constitution.

"The defendants contend that there is no limitation, under the Constitution of this state, as to the number of times the accused shall be confronted with the witnesses against him in criminal proceedings. The grant of right is that in all criminal prosecutions the accused, in every instance, shall have the right to be confronted with the witnesses against him.

"The frequency with which he is charged, or the frequency with which he is tried, can in no manner imperil, diminish, or destroy the right."

They refer the court to the trial of Lord Morley, vol. 6 Howell's State Trials, pages 770 et seq.; Regina v. Scaife, 5 Cox's Criminal Law Cases, p. 243; Reg. v. Guttridges, 9

Carrington & Payne, 475; Savage Case, 5 Carr. & P. 143; 2 Starkie on Evidence; Wharton on Crim. Evidence, par. 229; Taylor on Ev. pars. 474–478; Cooley on Constl. Limitations, p. 387; U. S. v. Angell, 11 Fed. 34; Murray v. Louisiana, 163 U. S. 101, 16 Sup. Ct. 990, 41 L. Ed. 87; People v. Sligh, 48 Mich. 56, 11 N. W. 782; People v. Newman, 5 Hill (N. Y.) 295; Finn v. Com., 5 Rand. 701; People v. Diaz, 6 Cal. 248; State v. McO'Blenis, 24 Mo. 402, 69 Am. Dec. 435; Owens v. State, 63 Miss. 452; Boyd v. U. S., 116 U. S. 616–635, 6 Sup. Ct. 524, 29 L. Ed. 746; State v. Banks, 106 La. 481, 31 South. 53.

Counsel give a very full and interesting statement of the legislation and jurisprudence of England on this subject, but we are controlled by our own legislation and jurisprudence. On behalf of the state the following authorities are referred to:

Vol. 2 (3d Ed.) Bishop, Crim. Proc. pars. 718–721; vol. 1, Bish. New Crim. Proc. page 731, page 736, par. 1194, and par. 1204; State v. Harvey, 28 La. Ann. 105; State v. Jordan, 34 La. Ann. 1219; State v. Coudier, 36 La. Ann. 291; State v. Allen, 37 La. Ann. 685; State v. Riley, 42 La. Ann. 995, 8 South. 469; State v. Arbuno, 105 La. 719, 30 South. 163.

To these may be added State v. McNeil, 33 La. Ann. 1332; State v. Alphonse, 34 La. Ann. 9; State v. Douglass, Id. 523; State v. Stewart, Id. 1037; State v. Granville, Id. 1088; State v. Jordan, Id. 1219; State v. Timberlake, 50 La. Ann. 308, 23 South. 276; State v. Wiggins, 50 La. Ann. 330, 23 South. 334.

A reference to these various decisions will show that this court has repeatedly permitted the introduction in evidence of testimony of witnesses which had been taken down in writing on a preliminary examination, when the presence of the witnesses themselves at the trial could not be obtained. In the case before us the witnesses whose written testimony was so received were permanently absent from the state. The accused were present at the examination, and cross-examined the witnesses. The jurisprudence of the state on the subject fully warranted the action of the district court in permitting the testimony to be introduced.

Defendants contend this jurisprudence has no longer force in Louisiana, under the Constitution of 1898, and the provisions of article 9, which are as follows:

"In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury: provided that cases in which the penalty is not necessarily imprisonment at hard labor or death, shall be tried by the court without a jury or by a jury less than twelve in number as provided elsewhere in the Constitution: provided further that all trials shall take place in the parish in which the offense was committed unless the venue be changed. The accused in every instance shall have the right to be confronted with the witnesses against him, he shall have the right to defend himself to have the assistance of counsel to have compulsory process for obtaining witnesses in his favor."

Were we to give to the words "in every instance," found in this article, the broad effect claimed for it, as evidencing an intention to bring about a change in the pre-existing situation, they would entirely sweep away all exceptions to the new rule so absolutely laid down, and do away, among other matters, with dying declarations.

The article in question commences, as did the corresponding article in preceding constitutions, with the expression, "In all criminal prosecutions." These words would as fully exclude exceptions, if taken literally, as would the following words, "In every instance;" and defendants attribute the presence of the same in the article to an intention to make it signify something more and other than it would do otherwise. We think those words were inserted simply by reason of the presence in the article of the matters covered by the proviso. The proviso broke in upon the continuity of the article, and in taking it up again, instead of repeating its opening words, "In all criminal prosecutions," the convention substituted the words, "In every instance," as a matter of style. Either this was the reason for the words, or they were placed in the article in order to place beyond question the fact that all kinds of criminal prosecutions were intended to be made to fall under the operation of the rule.

It is not at all probable that so radical a change as defendants claim could have been intended by or adopted by the convention

without some debate. We have been furnished with evidence of no such debate. We think the rule on the subject remains as it was before.

We see nothing in the application for a new trial or in the motion in arrest of judgment which calls for reversal.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.