PROVO STY, J.
The defendant was convicted of murder, without capital punishment, was sentenced to imprisonment in the penitentiary for life, and he appeals.
His first reliance is upon an objection made by him to the allotment of his case in, the lower court. The criminal district of the parish of Orleans is divided into two sections, and cases are required to be apportioned to the sections by lot. The manner of the allotment is prescribed by the Constitution and by rule of court, as follows:
“Said court [meaning the criminal district court] * * * shall have authority * * * to adopt rules, not in conflict with law, regulating the order of preference and proceedings in the trial of cases, and the method of allotting and assigning such cases, and of re-allotting and reassigning them in case of vacancy in the office, recusation, absence or disability of one or more of the judges, or in case such action is deemed necessary for the proper administration of justice. All prosecutions instituted in, and all cases appealed to said criminal district court shall be equally allotted or assigned by classes among the judges, and each judge or his successor, shall have exclusive control over any case allotted or assigned to him, from its inception to its final determination in said court, except as herein otherwise provided.” Oonst. art. 139.
The rule of court is as follows:
“Sec. 6. When the record of any criminal case is filed in the clerk’s office of the criminal district -court, the case shall be allotted upon that record; all informations subsequently filed from this record shall follow this first allotment.”
Defendant’s case was sent to the criminal district court from the Second city criminal court, and was at once given a docket number and allotted. It fell to Section A. By oversight, when the indictment was found by the grand jury, a second allotment was made, and the case fell to Section B. Defendant was arraigned in Section B, but, the fact of the previous allotment having been discovered, the second allotment and the arraignment were set aside, and the case was sent to Section A. Then another arraignment was had, and the defendant pleaded to the jurisdiction of Section A, on the ground that the case belonged by allotment to Section B.
Thé point he makes is that the “inception” of a cause, in the sense of article 139 of the Constitution, is the finding of the indictment, and that therefore the allotment made before the finding of the indictment was premature, the case not having then had an inception, and, as a consequence, counted for nothing.
This exact point was considered and overruled m the case of State v. Williams, 34 La. Ann. 1198. It would be sheer waste of time to undertake to add anything to what is there said. Defendant relies upon the case of State v. Sadler, 51 La. Ann. 1397, 26 South. 390, but that case is easily distinguished. In it the facts were that two defendants, who up to the finding of the indictment had been proceeded against separately for the same crime, and whose cases had been allotted and had fallen one to each of the sections of the court, were united by the grand jury in one indictment, so that the two cases became one, and had to be tried in one or other of the sections of the court, and a new allotment became necessary and was accordingly made. The court said:
“It seems clear that the only thing that could have been done was just what was done — the docketing of the cause under a new number, and allotting the same as a new one.”
True, the court did also say in the course of argument that the “finding of the indictment” was the “inception” of the cause in the constitutional sense. But that statement was in no wise necessary to the decision of the case; it was purely obiter. Nor can it be sustained. The inception of a cause in a court, in a constitutional sense and in every other sense, is the first step or proceeding *853 necessary to be taken in order that the subsequent proceedings may follow. The lodging of the papers in the criminal district court, no matter in what shape those papers may be, provided they are sufficient to seise the court of the subject-matter, is the inception of the ease. If this were not so, a case would have two inceptions, one in fact and one in law. The Constitution makes no such nice distinction. It says broadly that the cases shall be allotted, and that “each judge or his successor shall have exclusive control over every case falling to him from its inception to final determination in said court.” We fully agree with the concurring opinion of Manning, C. J., in the Williams Case, to the effect that:
“The sole object of the constitutional requirement that criminal prosecutions shall be apportioned between the judges by lot is to prevent any selection of cases by preference. Chance must determine which judge shall try oacb case. When that is accomplished, I think it a matter of indifference how, at what stage of the proceedings, the lot is cast. The constitutional provision is of that class that requires the most liberal construction in the interest of society and public order.”
The next reliance of the defendant is on a bill of exception to the admission of testimony taken at the preliminary examination, foundation having been laid for the introduction of the evidence by proof that the witness was permanently absent from the state.
The able counsel of defendant contend, and seemingly succeed in showing, that in all the states of the Union having the same constitutional provision as ours requiring the accused to be confronted with the witnesses against him, except in two, Alabama and Arkansas — that is to say, in more than three-fourths of the states — and by the unanimous sentiment of the text-writers, and the settled doctrine of the English courts, such evidence is inadmissible; but the learned counsel concede that the jurisprudence of this state, established by a long line of decisions, is the other way. However much we may be impressed with the very strong argument of counsel, we think it is now too late to undertake to shake that jurisprudence, and we shall adhere to it. State v. Harvey, 28 La. Ann. 106; State v. Jordan, 34 La. Ann. 1219; State v. Granville, Id. 1089; State v. Stewart, Id. 1037; State v. Douglass, Id. 524; State v. Coudier, 36 La. Ann. 291; State v. Allen, 37 La. Ann. 685; State v. Riley, 42 La. Ann. 995, 8 South. 469; State v. Timberlake, 50 La. Ann. 308, 23 South. 376; State v. Arbuno, 105 La. 719, 30 South. 163; and State v. Kline, 109 La. 622, 33 South. 618.
In last resort, counsel argue that the permanency of the absence of the witness was not established. The father of the absent witness testified that his son had left four months ago, and was living in Orange, Tex., where he was courting a young lady whom he expected to marry, and had said he was not coming back to New Orleans; that the only reason why his son would come back would be if he could not get work in Texas, but that there was more work in Texas than here, and that he did not expect his son would return, but would marry the girl and remain in Texas. That evidence was sufficient, in our opinion, to show the permanency of the witness’ absence. It showed that for the time being there was no prospect of his return.
Judgment affirmed.