260 So.2d 645

**STATE of Louisiana**

v.

**Joseph Edward JOHNSON.**

**No. 51267.**

March 27, 1972.

Rehearing Denied May 1. 1972.

Barham, J., dissented and filed opinion and was of the opinion a rehearing should be granted.

Dixon, J., was of the opinion a rehearing should be granted.

Earl B. Taylor, Alex L. Andrus, III, Opelousas, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., J. Y. Fontenot, Dist. Atty., Morgan J. Goudeau, III, Asst. Dist. Atty., Robert Brinkman, Special Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

On October 2, 1969 Joseph Edward Johnson was charged with manslaughter. His trial, conducted November 12, 13 and 14, 1969, resulted in a hung jury, a mistrial was entered and he was released on his bond previously filed.

Johnson was rearraigned on March 16, 1970 and pleaded not guilty. The case was fixed for trial on April 21, 1970 and Johnson was again released on the previously filed bond. Following the second trial he was convicted and sentenced to serve 21 years at hard labor in the State Penitentiary.

In this Court appellant relies on six bills of exceptions to obtain a reversal of his conviction.

Bill of Exceptions No. 2 was reserved when the trial court overruled a motion to quash the indictment for the reason that: "The general venire and the petit jury venire was [sic] improperly drawn, selected and constituted."

At the outset of our discussion of this bill, we observe that four other grounds were set forth in the motion to quash. The alleged defects, if true, would have presented serious challenges to the validity of the indictment. Thus it was alleged that the individual grand jurors were not qualified under Art. 401, C.Cr.P.; that persons other than the members of the grand jury were present while the grand jury was deliberating or voting or when the jury was examining a witness; that less than nine grand jurors were present when the indictment was found; and that the indictment was not endorsed "a true bill" and was not signed by the foreman of the grand jury.

The bill of indictment itself, which shows that it was properly endorsed and signed by the foreman, evidences the totally frivolous nature of this assertion. And no evidence was offered in support of the other alleged infirmities. Indeed, it was conceded by defense counsel, during the hearing on the motion, that they did not have any evidence, either then or when the motion was filed, that unauthorized persons were in the grand jury room during the jury's deliberations or that fewer than the required number of jurors were present when the indictment was found.

With regard to the allegation on which Bill No. 2 is based, that "the general venire and the petit venire was [sic] improperly drawn, selected and constituted", the complaint is merely a conclusion of the pleader. It does not set forth in what manner the venires were illegally drawn or constituted nor does it state any facts to support such a conclusion. Obviously, this allegation, like the others, was merely designed to permit defense counsel to conduct a "fishing expedition" at the hearing.

In this Court counsel assert that the invalidity of the selection of the venires consisted in the systematic inclusion of Negroes on the general venire. The contention is based on one answer given by Harold J. Sylvester, Clerk of Court and ex-officio member of the jury commission. During his examination the following colloquy occurred:

> "Q. Now, in your selection of the members to go into the general venire would you say that you included Negroes?
>
> "A. I do.
>
> "Q. Systematically or intentionally?
>
> "A. Well, I would say it is systematically."

■ Considering the entirety of Sylvester's testimony, it is clear that in answering this question he thought that he was required to choose between the two terms "systematically" and "intentionally", and the term "systematically" better described the manner in which he made his selections. His testimony, as well as that of the other commissioners, demonstrates that the "system" they used resulted in the inclusion of Negroes on the venire. There was no showing that their method resulted in the exclusion of Negroes from the grand or petit juries, and the entirety of their testimony demonstrated that Negroes were not discriminated against in the selection of the venires.[1]

We find, therefore, that the trial court properly overruled the motion to quash.

Following his rearraignment on March 16, 1970, defense counsel (who had also represented appellant on the first trial) on March 25, 1970, filed a number of pretrial motions which were heard on April 2, 1970. On the latter date they moved to obtain a transcript of the entire record of the previous trial. And on April 7, 1970, they sought to obtain a transcript of the testimony of two persons, who allegedly testified at the first trial but whose whereabouts were assertedly unknown, so that their testimony might be preserved and offered at the second trial. On April 9, 1970 the latter motion was amended so as to include the testimony of a third named person. The motions were regularly set down for a hearing on April 13, 1970, were heard on that day and were overruled.

Bill of Exceptions No. 5 was reserved when the court denied the motion to transcribe the entire proceedings of the first trial. Bill of Exceptions No. 6 recites that it was reserved to the court's overruling the motion to transcribe the testimony "of two witnesses who testified on defendant's behalf at the previous trial * * * when

---

1. Each of the commissioners who testified said that he did not intentionally include or exclude Negroes, wage earners or welfare recipients from the names submitted by him for the venire.

the witnesses were not available to testify on defendant's behalf at the second trial."

The note of evidence taken at the hearing on the motions reveals that the motion to obtain a transcript of the entire record of the first trial was overruled because it came too late.

The uncontradicted testimony of the court reporter was that, if ordered to transcribe the record, she would do so, but that because of the length of the transcript it would take from twelve to fifteen days to complete it. She further said that it could be completed in that time only if the court would close and permit her to work full time on the transcription. Defense counsel did not request a continuance

■ The landmark case with regard to an indigent's right to a free transcript of earlier proceedings is Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Therein the United States Supreme Court enunciated the rule that an indigent defendant is entitled to a transcript of the proceedings for the purposes of appellate review of his conviction, if such transcripts are available to other accused for a fee, unless other effective means were available which would afford him adequate review. The decision is based on the concept that "In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color," and that "Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

The case has been followed in other decisions. See, for instance, Eskridge v. Washington Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); and Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).[2]

In the Roberts case the court reaffirmed and restated the jurisprudence as follows:

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, *when based upon the financial situation of the defendant,* are repugnant to the Constitution." (Emphasis added)

2. The Court has extended the doctrine to apply to transcripts of evidence taken at a post-conviction hearing when the state law authorizes review of the ruling at the post-conviction hearing, Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); and Long v. Dist. Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), and to appellate filing fees, Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). But it specifically declined to pass on the issue of whether the State is required to furnish an indigent state prisoner a free trial transcript to aid him to prepare a petition for collateral relief, because the cause could be disposed of on other grounds. Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970).

In the recent decision of Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), the Court held that a denial of a transcript of a mistrial, the accused being subsequently tried for and convicted of murder, did not violate the equal protection clause of the Constitution, because the circumstances showed that there was available an informal alternative which was substantially equivalent to a transcript. However, the obiter dictum of the opinion indicates that the Court would extend the rationale of Griffin and its progeny if presented with a case wherein a transcript of a mistrial for use in preparing for a subsequent trial is requested by an indigent, and there is no adequate alternative.[3]

But again, in the Britt opinion, the Court recognized that the holding in Griffin is that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, *when those tools are available for a price* to other prisoners." (Emphasis added.)

■ We are of the opinion, however, that those cases are distinguishable from the one presently under consideration and, therefore, are not controlling here. In fact, it is clear from the record before us that, in the instant matter, the refusal to provide the requested transcript was not based on, and did not result from, the financial inability of the appellant to pay for it. Rather, the ruling of the court was prompted by the demonstrated fact that, when requested, the transcript could not be prepared in time for the trial, unless one section of the court stopped its operations entirely. Because of this the transcript would then have been unavailable before trial even to one willing and able to pay for it. As heretofore noted, no motion for a continuance was requested because of the then unavailability of the transcript, and appellant's counsel made no showing as to why they delayed seeking the transcript.[4]

Under these circumstances, we find no error in the trial court's overruling the motion to transcribe the record of the first trial.

We are likewise of the opinion that there is no merit in Bill of Exceptions No. 6. In appellant's motion and the supplemental motion to obtain a transcript of the testimony

---

3. This decision was rendered long after the district court in the instant matter denied appellant's request for a transcript of his first trial and his subsequent conviction. Consequently, we would be hesitant in giving retroactive effect to the dictum of the opinion even if it were applicable to the instant matter. But as is hereafter shown, the cases are distinguishable.

4. By this comment we do not mean to suggest that a continuance should always be granted when time prevents preparation of such a transcript prior to a second trial. However, there may be circumstances presented which would warrant a delay. If any such valid reasons existed here they were not presented to the trial court.

of certain witnesses he asked for the testimony of Rodney Lemelle, Beverly Ann Perks and Johnny Smith. The bill of exceptions was reserved to the refusal of the court to order a transcription of only *two* of these persons, without designating which two. We presume, however, that the witnesses referred to are Johnny Smith and Beverly Ann Perks, because in appellant's brief to this Court it is conceded that Ronnie Lemelle was located in Houston, Texas, and was present at the trial, having been subpoenaed under the provisions of C.Cr. Proc. Art. 741 as an out-of-state witness.[5]

■ The State in its brief here points out that Johnny Smith was not called as a witness at the first trial by either the State or the defendant. This assertion is supported by an affidavit of the Court Reporter who took the testimony in the first trial, and is not challenged by the appellant. Being a court of review, and having no original jurisdiction in criminal matters, we ordinarily do not take cognizance of documents submitted here for the first time. However, in view of the State's declaration and the affidavit combined with defense counsel's failure to deny the statement made by counsel for the State, we think it would serve no useful purpose to remand the case to establish the fact that Smith did not testify.

■ In any event, we have concluded that appellant did not make a sufficient showing to warrant the issuing of an order to transcribe the testimony of either Smith or Beverly Ann Perks who, it appears, testified at the first trial as a rebuttal witness for the State and not as a witness for the defense, as alleged.

Although in some jurisdictions the statutes enumerate the grounds upon proof of which prior testimony can be introduced at a later trial, the concept of permitting the use of such testimony, under certain circumstances and conditions, in a subsequent trial is well grounded in the common law, and its introduction is a matter within the discretion of the trial court. 31A C.J.S. verbo Evidence § 384, p. 944 et seq. One of the circumstances, under which the prior testimony may be used, is that the witness is unavailable to testify at the later proceeding. In addition:

"A proper foundation or predicate must be laid before former testimony can be admitted as competent. So, a party seeking to introduce the testimony of a witness given on a former trial must first introduce preliminary evidence of the existence of the reasons for its introduction, and must show a valid excuse for not producing the witness. He must show that the witness or witnesses whose testimony is offered are not available for ex-

---

5. Article 741 provides a method for claiming a witness from another state.

amination at the time of the trial, even where there was opportunity for cross-examination at the former proceeding, and that it is impossible for him to procure their attendance and testimony.

\*    \*    \*    \*    \*    \*

"The preliminary proof should be full and convincing, and the inability of the witness to appear must be established by a ruling of the court or by agreement of counsel. The sufficiency of such proof is primarily a question for the trial court and is largely within its discretion, which will not be interfered with unless an abuse of discretion is shown." 31A C. J.S. verbo Evidence § 391, p. 962.

Similar language is also found in Volume 29 of American Jurisprudence, in its exposition of the pertinent evidentiary principles. Thus, it is therein stated that:

"It is well settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court, and in the absence of a showing that such discretion has been abused, its decision will not be interfered with on appeal. It is said that if there is evidence of an effort to subpoena a witness who does not appear, it is within the discretion of the trial court to determine whether his testimony given at a former trial shall be admitted, although the mere issuance of a subpoena in itself is not a sufficient basis for the admission of testimony rendered at a former trial by the missing person." 29 Am.Jur. 822, verbo "Evidence", Sec. 750.

"\* \* \* it has frequently been said that the testimony of a witness given at a former trial or proceeding, with an opportunity for cross-examination, is admissible in a subsequent trial involving the same action or proceeding, if it is shown that such witness is unavailable since he is out of the state or jurisdiction—that is, beyond the reach of the process of the court." 29 Am.Jur. 826, verbo "Evidence", Sec. 755.

The only evidence introduced at the hearing on the motion to obtain a transcript of the testimony of these witnesses is the testimony of Austin Wyble, Jr., a St. Landry Parish Deputy who read from the returns of the subpoenas issued for Smith and Beverly Ann Perks. According to his testimony, the return for Beverly Ann Perks showed that "subject now lives in Washington, D. C." and for Smith it showed that "No one knows where this subject is anymore." (The subpoenas and their respective returns were not placed in evidence.)

Deputy Wyble was not the officer who attempted the service, and had no personal knowledge of what investigation was made by the deputy in attempting to locate the persons named in the subpoenas. The deputy who did attempt the service was not called as a witness. No other evidence was offered by the defense to show that it had taken any action to locate the wit-

nesses, or why it had not attempted to subpoena Beverly Ann Perks under the provisions of C.Cr.P. Article 741, as it had subpoenaed Rodney Lemelle who had moved to Texas subsequent to the original trial.

On this showing we conclude that the trial court did not abuse its discretion in denying the motion to transcribe testimony.

Bill of Exceptions No. 7 is based on the assertion that the trial court "refused to dismiss for cause a prospective juror, who on voir dire examination stated that he had a fixed opinion that would not readily yield to the evidence, and the prospective juror would require the defendant to introduce evidence to change that opinion."

There is no merit in the bill. The testimony of the juror (Henry Cappel, Jr.) does not, as alleged, reflect that he had a fixed opinion that would not readily yield to the evidence. To the contrary, the evidence discloses, as the trial judge observed in his per curiam, that the prospective juror "did not have such a fixed opinion as would not yield to the evidence." The following responses by the proposed juror to questions of the trial judge clearly exhibit the correctness of the ruling.

"BY THE COURT: Mr. Cappel, the fact that you may have an opinion or impression about this case, is it such that you could not render an impartial verdict according to the law and to the evidence as you hear it here in Court?

"BY MR. CAPPEL: No sir, I could decide it according to the evidence.

"BY THE COURT: You could—

"BY MR. CAPPEL: It wouldn't interfere with my impression.

"BY THE COURT: You could disregard any impression you may have and relegate your decision simply to the evidence you hear from the witness stand, your appreciation of the evidence, and the law as the Court instructs you the law is?

"BY MR. CAPPEL: Yes, sir.

\*    \*    \*    \*    \*    \*

"BY THE COURT: Mr. Cappel, you have made a certain response to the Court—would you require either the State or the defendant to put on evidence to change your mind? Is it that made up or could you just take the evidence as you hear it and disregard everything else?

"BY MR. CAPPEL: I could disregard everything else. This was just a conversation this morning. This happened—he asked me if I had formed an opinion and I said yes. I didn't say it would—."

The Code of Criminal Practice, Article 797(2), specifically provides that:

" \*    \*    \* An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground

of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;"

The Article has been followed innumerable times by this Court. See State v. McDonald, 224 La. 555, 70 So.2d 123; and State v. Futch, 216 La. 857, 44 So.2d 892, and the cases cited therein.

At the trial the State called Philip Henry, Jr. as a witness. During his cross-examination, defense counsel interrogated him and received the answers as follows:

"Q. I believe you said you knew Edward Johnson all of your life, you grew up with him and went to school with him?

"A. Yes, sir.

"Q. Do you like him?

"A. I never did mess around with him.

"Q. Do you dislike him?

"A. I tell you why I didn't mess around with him.

"Q. All right.

"A. Because when he whip this old man, Mr. Burleigh, on the railroad track—"

At this point defense counsel objected to the testimony. The objection was sustained, and counsel moved for a mistrial which was denied. Later while he was still cross-examining Henry, the following colloquy occurred:

"Q. Now, you testified that when you saw—when you realized that Edward Johnson was the deputy in the bar that night that that surprised you, is that correct?

"A. Yes, sir.

"Q. How would that surprise you in view of the fact that Edward Johnson had, previous to that time, had arrested you for fighting?

"A. Well, to tell you the truth, I thought a deputy couldn't have no record like he had, and I been knowing—"

Again defense counsel objected and moved for a mistrial, and it was denied. Bills of Exceptions No. 11 and 12 were reserved to the court's overruling the motions.

Although, at the time the answers were given, defense counsel sought a mistrial and reserved the bill to the court's ruling thereon, their contention now is that the court erred in failing to admonish the jury to disregard the testimony. They argue that the testimony was prejudicial to appellant, and that C.Cr.P. Article 771 placed on the trial judge the duty to "declare a mistrial in the event prejudicial and irrelevant statements are made in the presence of the jury, or to admonish the jury to disregard the same if, in his discretion,

an admonishment will be sufficient to cure the prejudicial effect of the statement."

At the outset we observe, as did the trial court in its per curiam, that the answers were not unsolicited, gratuitous comments of the witness. They were directly responsive to the questions propounded by defense counsel himself and not to be unexpected. For instance, when counsel indicated to the witness that he should tell why he did not like the appellant, he must surely have anticipated that the answer would be uncomplimentary and prejudicial to appellant.

But be that as it may, in relying on Article 771, counsel completely disregarded the provision of the article that "*upon the request of the defendant or the state*" (emphasis added) the court shall admonish the jury to disregard a remark or comment which is immaterial and prejudicial to the defendant or the state. No request for an instruction was made in the instant case. We hold, therefore, that there is no substance in the assertion that the judge committed reversible error in failing to admonish the jury to disregard the remarks.

In addition to the above discussed bills of exceptions which were briefed by defense counsel, there appear in the record seven other perfected bills which were not discussed on this appeal, counsel evidently considering them to be without merit.

Nevertheless, we have examined them and find that none presents reversible error.

Bill of Exceptions No. 1 asserts that the trial court erred in denying defendant's motion to exclude the public and press from the pre-trial hearing. The motion apparently was made orally in open court. We find nothing in the record to establish that appellant was in any way prejudiced by the ruling.

Bill of Exceptions No. 3 was reserved when the trial court overruled a motion praying "that the petit jury venire for the week during which this trial is set be quashed or that this case be continued until such time as this case is set for trial under a method whereby the particular petit jury applicable to this case will be determined by chance."

In his per curiam to this bill the trial court states that "The petit jury venire was selected in conformity with Article 416 of the Code of Criminal Procedure." This being so (nothing in the record contradicts the recital of the trial judge), the bill is without substance.

Alleging that the method "whereby the Judge presiding over a trial of a case is determined by the time to which the State fixes such case for trial deprives defendant of the right to have the selection of the judge determined impartially * * * and deprives him of due process of law and the equal protection of the law * *,"

appellant moved to quash the indictment, and/or to continue the cause "until such time as this proceeding is allotted to a division of this court by chance."

The trial court overruled the motion and appellant reserved Bill of Exceptions No. 4.

Conceding, arguendo, that such a right as claimed by appellant exists, nothing in the record supports the assertion that he was deprived of it. Moreover, there is no showing or even an assertion that the judge who presided over the trial did not fairly and impartially conduct the proceedings.

The bill is groundless.

■ Father Lawrence Flanagan, who had not been subpoenaed, was called as a witness by the State. Defense counsel objected to his testifying on the ground that he had not been sequestered and reserved Bill of Exceptions No. 8 when an objection was overruled and the witness was permitted to testify. The per curiam of the trial judge states that "The witness, * * * was not in the courtroom and had not heard any of the testimony. The defendant was not prejudiced by allowing the witness to testify because he had not been sequestered."

The record supports the facts set forth in the per curiam. The bill is not meritorious.

Bill of Exceptions No. 9 was reserved when the trial court, over objection of defense counsel, permitted Mrs. Aubrey Fuller, a State witness, to testify, it being asserted that she had not been placed under the rule of sequestration.

The per curiam of the trial court states:

"Mrs. Aubrey Fuller, a witness not under subpoena, was not in the courtroom when the witnesses were originally sequestered. When she did appear, she left the courtroom with other witnesses who were re-instructed as to the rule of sequestration. When the witnesses were asked to leave the courtroom prior to reception of testimony she left."

The note of evidence confirms the court's observations. The bill has no merit.

While examining one of its witnesses, the State's attorney exhibited to him a photograph of the scene of the crime and was asked to point out where he observed the body of the victim just after the incident occurred. Defense counsel objected for the reason that "It's the same photograph that the body is drawn in there. If he has an independent recollection * * *."

The State's attorney asserted that there was no body "drawn in" on the photograph. After colloquy between the court and counsel the objection was overruled and Bill of Exceptions No. 10 was reserved.

There are a number of photographs of the scene of the crime in the record. We find none where a body is "drawn in." The record establishes that the witness was directed to tell, from his "own personal memory" only, where the body was.

We find no error in the court's ruling.

■ During the trial the State called Philip Henry, Sr. as a witness. The defense objected to his testifying because "he had been in attendance at the first trial in violation of the first trial Judge's order that all witnesses present themselves and be sequestered." The objection was overruled, and Bill of Exceptions No. 13 was perfected.

In his per curiam to this bill the trial judge states:

> "The witness, Philip Henry, Sr., was not called as a witness at the first trial of defendant, hence, not placed under the rule of sequestration with the witnesses for that trial. The first trial ended in a mis-trial. He was called as a witness in the second trial, and placed under the rule of sequestration. Even if he was in the courtroom for the first trial which ended in a mis-trial, the State is not thereby prevented from calling him as a witness in the second trial."

The ruling is correct.

For the reasons assigned the conviction and sentence are affirmed.

BARHAM, J., dissents and assigns written reasons.

DIXON, J., concurs.

BARHAM, Justice (dissenting).

I cannot agree with the majority's reasoning or conclusions, for I find reversible error shown by two of the bills of exceptions presented for this court's review.

Bill of Exceptions No. 5 was reserved to the trial court's denial of defendant's motion for a transcript of the proceedings of the previous trial which had resulted in a mistrial. The per curiam of the trial judge simply states that the defendant had no right to this transcribed record for use in a subsequent trial. In this the judge erred, and the majority has endorsed his error.

A long line of United States Supreme Court cases has delineated the federal constitutional rights of an indigent defendant to the necessary instruments and services for adequate defense, appellate review, and post-conviction remedies. In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), it was held that all people, poor and rich, must stand on an equality before the bar of justice, and that if adequate state appellate review requires a transcript of the trial proceedings, a denial of such a record to an indigent free of cost was a violation of the Due Process and Equal Protection clauses. The court there said: "Destitute defendants must be afforded as adequate appellate review as de-

fendants who have money enough to buy transcripts."

Thereafter in Eskridge v. Washington State Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), the Supreme Court, although holding that there could be acceptable alternatives to a full transcript, reiterated its holding that unless the alternative was a full and complete instrument for securing equal legal rights, a transcript would be required. In Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), in a per curiam the Supreme Court cited Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), and Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), for the proposition that no financial consideration could be interposed between an indigent and his exercise of his legal rights. Eskridge and Long recognized the indigent's right to a transcript in his exercise of a post-conviction remedy.

In Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969), the Supreme Court repeated that where there is no adequate substitute, as announced in Griffin, for a full stenographic transcript, denial of a transcript to an indigent is invidious discrimination impermissible under the Constitution.

Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969), held that even in the absence of statutory

authority to provide transcripts to indigents at public expense, an indigent defendant was entitled to a free transcript of municipal court trial proceedings which was necessary in order to perfect an appeal from a judgment of that court.

This, then, is the general background of the federal constitutional requirements for transcripts for appellate review and post-conviction remedies. Tied in with this general line of cases are decisions specifically holding that the same tools, including a transcript, which must be made available to an indigent defendant on appeal must also be provided for his defense at trial.

In Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), an indigent defendant had been denied a free transcript of his preliminary hearing under a New York statute providing that transcripts of such proceedings were to be furnished at a specified fee. While the case was pending on the United States Supreme Court docket, the New York Court of Appeals declared that the statutory requirement of payment for a transcript was unconstitutional as applied to an indigent. People v. Montgomery, 18 N.Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730 (1966). The United States Supreme Court chose to meet the federal constitutional issue when the case was heard rather than rely upon the new state jurisprudence, and declared that transcripts of preliminary

hearings must be furnished free to indigents before trial. It said:

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. * * * Only last Term, in Long v. District Court of Iowa, * * * we reiterated the statement first made in Smith v. Bennett, * * * that 'to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' * * *"

On March 14, 1969, different panels of the United States Court of Appeals, Second Circuit, handed down two decisions, each of which involved an indigent defendant's right to a free transcript of a previous mistrial in order to prepare for the new trial. Both cases arose in New York, where a defendant could procure that transcript if he paid for it, just as he can in Louisiana.[1]

In one of those decisions, United States v. Carella, 411 F.2d 729 (2nd Cir. 1969), an indigent defendant was denied a full transcript of a lengthy former trial. That court justified the denial on the basis that there was an adequate alternative for the defendant since he had statements and grand jury testimony of many witnesses and, "most important, the direct testimony' at the first trial of Calabrese whose evidence Erhart's [the indigent's] brief characterized as the basis of the entire prosecution case against him".

In United States ex rel. Wilson v. McMann, 408 F.2d 896 (2nd Cir. 1969), the other panel met headon the same issue, and in unequivocal language held that a transcript of a previous trial was necessary for impeachment and also for assistance in effective preparation for the new trial. In Wilson the Court of Appeals called attention to the minority opinion of Mr. Justice Harlan as well as the majority opinion in Roberts v. LaVallee, supra, and said:

"We think it is not a sufficient answer that Wilson's counsel was permitted to see Russo's testimony before the Grand Jury. A similar argument was rejected in *Roberts*. Nor, in our view, are Wilson's rights defeated by the fact that the same assigned counsel rather than a different one defended him on the two trials. In several of the cases involving applications for transcripts of a former trial, or parts thereof, courts have implied that, if the lawyer were the same, he might be expected to remember what testimony was given at the

---

1. See State v. Chaney, 153 La. 371, 95 So. 866; see also State v. Eubanks. 240 La. 552, 124 So.2d 543. See also C.Cr.P. Art. 844, Official Revision Comment (d); R.S. 15:291 and 13:961(F).

first trial or perhaps he might have notes to refresh his recollection. We think constitutional rights should not be implemented in any such niggardly fashion.

"In other cases various suggestions are made to the general effect that a trial judge in the exercise of his discretion can avoid any violation of an indigent defendant's right to equal protection of the laws by permitting some sort of limited access, during the second trial, to the reporter at the first trial, to check any specific alleged contradiction. This is not only a case of too little and too late; it is also a breeder of delay and confusion. Worst of all, despite the good intentions of the trial judge, such a ruling is apt to lead the defendant into a trap and gravely prejudice his defense. That is precisely what happened in this case."

Both the Carella panel and the Wilson panel apparently believed the two opinions could be differentiated although some of the language in Carella indicated non-compliance with the decision of the United States Supreme Court in Roberts v. LaVallee, supra.

In Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (December 13, 1971),[2] the United States Supreme Court reviewed a trial court's denial of an indigent defendant's motion to be afforded a

free transcript of a mistrial before his retrial. The court said: "Griffin v. Illinois and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. The question here is whether the state court properly determined that the transcript requested in this case was not needed for an effective defense."

The court then recognized that "particularized need" is not a necessary showing to entitle an indigent to a transcript. In footnote 3 the majority in Britt rejected again the dissent of Mr. Justice Harlan in Roberts v. LaVallee, supra, which called for an examination for need and prejudice to determine whether the denial was "harmless beyond a reasonable doubt". The court stated:

"But the court below did not use the language of 'particularized need.' It rested the decision instead on the second factor in the determination of need, that is, the availability of adequate alternatives to a

---

2. Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372, handed down on the same date, held that the right to a transcript of trial proceedings for the purpose of appeal applied in misdemeanors as well as in felonies.

transcript. The second trial was before the same judge, with the same counsel and the same court reporter, and the two trials were only a month apart. In these circumstances, the court suggested that petitioner's memory and that of his counsel should have furnished an adequate substitute for a transcript. In addition, the court pointed to the fact that petitioner could have called the court reporter to read to the jury the testimony given at the mistrial, in the event that inconsistent testimony was offered at the second trial.

"We have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial. Moreover, we doubt that it would suffice to provide the defendant with limited access to the court reporter during the course of the second trial. That approach was aptly rejected as 'too little and too late' in United States ex rel. Wilson v. McMann, 408 F.2d 896, 897 (CA2 1969). * * *"

It is apparent that the United States Supreme Court has endorsed and in fact incorporated the rationale of United States ex rel. Wilson v. McMann, supra, and that if Carella is in conflict with Wilson, it is disapproved by that court.

The Supreme Court in Britt held that an unusual combination of circumstances there provided an adequate alternative to a transcript of the proceedings. Its basic conclusion is this: "*A defendant* who claims the right to a free transcript *does not,* under our cases, *bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight.* In this case, however, *petitioner has conceded* that he had available an informal alternative which appears to be substantially equivalent to a transcript. * * *" (Emphasis supplied.)

The State acknowledges the distinctions between this case and the Britt case which are favorable to the defendant's contentions: Here there was a longer delay between the first and second trials, and the presiding judge and the court reporter were not the same in each trial. The State argues that notwithstanding these distinctions this defendant had an adequate alternative to a full transcript of the previous trial, saying in brief: "* * * In St. Landry Parish, the court reporters are on a first name basis with all of the attorneys, and they will assist the attorneys in every way possible. If counsel for Johnson had requested of Mrs. Ruth Pressburg, the court reporter of the first trial, to read back the record or portions thereof to him or permit him to listen to the tapes, she would have done so. This would have afforded him with an adequate alternative to a transcript."

The defendant argues that the record would not be available to him on any basis

through Mrs. Pressburg, and contends strenuously that there was no informal alternative method which would prepare him for trial and provide him with the necessary information for purposes of impeachment.

On the trial of the motion, the court reporter, Mrs. Pressburg, testified that she could not transcribe the record unless she had 12 to 15 days, and then only if the court would close and let her work full time on the transcript. Moreover, she testified that because she was not feeling well at that time, she did not think she could work as fast as she usually could. It is apparent from the tenor of her testimony that she could not and would not afford defense counsel the time necessary for a review of her untranscribed record.

Here the defendant has failed to *concede* that there was an adequate alternative to a full transcript, the record fails to show an adequate alternative, and I find that the record actually negates the existence of an alternative which would suffice. Under the reporter's testimony on the trial of the motion it would be futile to remand for exploration of a possible alternative, as was done in Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970).[3] This case is on all fours with United States ex

rel. Wilson v. McMann, supra, and this court is required to conclude under the holding of Britt v. North Carolina, supra, that the defendant was entitled to a free transcript of the previous mistrial before being required to proceed in the new trial.

The majority has concluded that the refusal of the defendant's request for a transcript of his first trial was based not on his inability to pay but on a finding that the requested transcript could not be prepared in time, and on this basis it has upheld the ruling of the trial court. The majority's finding accords with the argument of the State that the motion for transcript filed on April 2 came too late because the defendant had the whole period between his mistrial in November of the preceding year and the trial date of April 21 in which to ask for a transcript. It is important to examine the relevant dates in the light of the circumstances of this case.

Since it was the State's choice to retry the defendant or not, he had no need to move for a transcript until March 16, when he was rearraigned and trial was set for April 21. Indeed, such a motion filed earlier might well have been dismissed as premature. As I view the matter, he had only the period from March 16 to April 21

3. In Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), the court said in footnote 6: "Cf. Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970), in which no such concession was made. In that case it

simply appeared from the record that petitioner might have been able to borrow a transcript from the prosecutor, in light of the fact that he had done so in an earlier proceeding. We remanded the case to permit exploration of that possibility."

in which to seek the transcript, or a little over a month. Meanwhile, time was consumed in the filing and hearing of other defense motions; and when the defendant moved for a transcript on April 2, approximately three weeks before trial, the judge, who controlled the court calendar, set the motion down for hearing on April 13, only about a week before the trial date. Here the determination that the defendant did not timely request the transcript of the previous trial is obviously made by the majority without a consideration that the motion was filed three weeks before trial. Its own factual conclusion is that the transcript could have been prepared in two weeks. It is the delay of the trial court and/or the State in reacting to the motion for the transcript that led to the limitation of time.

Moreover, I am of the opinion the majority and the trial court have moved to a side issue in order to avoid the important constitutional question presented: Was this defendant entitled to the transcript before retrial? If he was and if additional time was necessary, the court should have afforded that time in order to accord the defendant his constitutional right. The short time remaining before trial when the motion was *actually heard,* which the majority uses to work a denial of a constitutional right, was not the result of delaying tactics or schemes by the defense to deprive the State of its right to prosecute; it

was in point of fact, the result of a combination of circumstances not within the control of the defendant but rather within the control of the State. Had more time been allowed between arraignment and date for retrial, had more timely hearings been held on the motions, had the State and the court properly exercised that degree of control within their power, the brevity of time relied upon by the majority would have disappeared from the case.

This imputation to the defendant of laches in order to distinguish the instant case from what is commonly called a "goose case" (Britt v. North Carolina, supra), especially in the consideration of constitutional rights, is error, and the denial of the motion for free transcript of the previous mistrial on this or any other basis under these circumstances is clearly reversible.

Bill of Exceptions No. 6 was reserved to the trial judge's denial of defendant's motion to transcribe the testimony of certain witnesses who were alleged to have testified at the previous trial, under an allegation and proof made on the hearing that the witnesses could not be located to testify at the second trial. I cannot agree with the majority that the showing made by the defendant was insufficient.

The majority appears to admit that the testimony sought to be transcribed and preserved in this case would have been admissible on the trial if the witness had been

unavailable at the trial. The majority is correct that under the common law a defendant may use the testimony of a witness in a former trial in the new trial for the same offense when the witness cannot be located and presented to testify.[4] Moreover, that right is recognized both jurisprudentially and statutorily in Louisiana, and it would seem the majority would have resorted to this source of law.[5]

4. The general rule prevailing at common law is that the testimony of a witness given at a former trial or in any other court proceeding may be used in a trial when certain prerequisites are met. 2 Wharton's Criminal Evidence §§ 470–92 (12th Ed. 1955); 2 Underhill's Criminal Evidence §§ 420–27 (5th Ed. 1956); 23 C.J.S. Criminal Law §§ 892–899, and cases cited; 21 Am.Jur.2d Criminal Law § 343, and cases cited; Anno., 15 A.L.R. 495, supplemented in 79 A.L.R. 1392, 122 A.L.R. 425, and 159 A.L.R. 1240. Among these prerequisites are: The unavailability of the witness to testify in person, the full exercise of the right of confrontation of the witness at the former proceeding by the opposing party, and a substantial identity of the charge and the issues in the former proceeding and the pending trial.

5. Even the early Louisiana jurisprudence recognized the right to use the testimony from a former trial of a witness since deceased. In State v. Cook, 23 La.Ann. 347 (1871), the court allowed one who had heard the deceased witness testify to recount that testimony as remembered, although it was admitted that the recall was imperfect and the account of that testimony imprecise. Cf. State v. Oliver, 43 La.Ann. 1003, 10 So. 201 (1891), which refused to allow *"parol* proof of the *purport and substance* of the testimony of certain absent witnesses". The court emphasized again in conclusion that the opinion was "limited to the *sole* question of the *reproduction, by this means,* of the *parol* evidence of absentees". In State v. Thompson, 109 La. 296, 33 So. 320 (1903), the court admitted testimony of a deceased witness from a former trial against the defendant even though the jury was thereby given notice that there had been a previous trial. We have provided in Code of Criminal Procedure Article 295 that the transcript of the testimony of any witness at a preliminary examination is admissible for any purpose in any subsequent proceeding in the case "if the court finds that the witness is dead, too ill to testify, absent from the state, or *cannot be found".* (Emphasis supplied.) The defendant in brief and argument sought to assert the right of reproduction of testimony of a previous trial by analogizing the use at trial of testimony taken at a preliminary examination. The State in argument met this contention urging that this is provided statutorily and therefore in the absence of a statute the analogy should fail. Revised Statutes of 1870, Section 1010, provided that the committing magistrate hold a preliminary hearing and required him to reduce to writing the testimony of a witness under oath. It was also his duty to receive the voluntary declaration of the accused and to reduce it to writing, and when this declaration of the accused was properly certified, *it was evidence* before the grand jury and the petit jury. Without any specific statutory authority for the use of the written deposition of other witnesses, this court uniformly held that the testimony of witnesses in the earlier proceeding was also admissible upon trial. State v. Harvey, 28 La.Ann. 105 (1876); State v. Alphonse, 34 La.Ann. 9 (1882); State v. Stewart, 34 La.Ann. 1037 (1882); State v. Jordan, 34 La.Ann. 1219 (1882); State v. Allen and Carter, 37 La.Ann. 685 (1885); State v. Madison, 50 La.Ann. 679, 23 So. 622 (1898); State v. Kline, 109 La. 603, 33 So. 618 (1903); State v. Banks, 111 La. 22, 35 So. 370 (1903); State v. Bollero, 112 La. 850, 36 So. 754 (1904); State v. Scarbrough, 167 La. 484, 119 So. 523 (1929).

*But* admissibility is not the issue before us. The right to have testimony transcribed and preserved is the issue. Where the majority errs in its consideration of the motion to transcribe and preserve testimony is in assuming that under all circumstances this witness *will be available* at the trial weeks later, and therefore the transcription of the former testimony is unnecessary for it would then be inadmissible. The ruling upon admissibility of the transcribed testimony is to be reserved to the trial judge, if the testimony is offered, after he has an opportunity to weigh the totality of the circumstances in the light of the right of confrontation,[6] use and purpose of the testimony, the similarity of issues, and other factors.

The majority's entire discussion here applies to the question of admissibility of the evidence at the time of trial instead of to the question of the right to obtain a transcription of previous testimony for possible use at the trial. The showing made at the hearing on the motion to transcribe need not be that strong showing which is required when such transcribed testimony is offered in evidence at trial. The preliminary determination should weigh only whether a probability exists for need of the transcribed testimony for later use in lieu of personal testimony.[7] The more restrictive requirements set forth by the majority in affirming the judge's denial of the motion should be reserved for determination on the trial.

In summation, admissibility is not the criterion to be applied in considering this motion, and it was error for the majority to reason from that position.

I respectfully dissent.

Our present Code of Criminal Procedure Article 295 and its immediate source provision (Article 155 of the 1928 Code of Criminal Procedure, former R.S. 15:155) changed their source provision, Section 1010 of the 1870 Revised Statutes, by providing specifically that the deposition of a witness who is dead, is absent from the state, cannot be found, or is too ill to testify can be received in evidence upon the trial. Express statutory authority is not necessary for a determination of admissibility of this kind of evidence. Most evidentiary rules are jurisprudential, and jurisprudence, common law, and our own law were the wellspring for the statutory law above. Even before the statutory provision expressly authorizing the use in a subsequent trial of witnesses' testimony taken at a preliminary examination, under Louisiana jurisprudence it was allowed when the witness was dead, State v. Alphonse, supra, when it was shown that the witness was absent from the state or could not be found, State v. Harvey, supra; State v. Stewart, supra; State v. Jordan, supra; State v. Allen and Carter, supra; State v. Madison, supra; State v. Kline, supra; State v. Banks, supra; State v. Bollero, supra; State v. Scarbrough, supra, or was too ill to testify, see dictum in State v. Harvey, supra.

6. When the defense, as here, intends to offer the testimony, the constitutional right of confrontation is not at issue, but the lack of an opportunity to confront the witness by the State would be a pertinent consideration for a ruling on admissibility.

7. Code of Criminal Procedure Article 741 does not, standing alone, under the circumstances of this case negate that probability.