337 So.2d 1058 (1976)
STATE of Louisiana
v.
Charles OVERTON.
No. 57480.
Supreme Court of Louisiana.
June 21, 1976.
Rehearing Denied September 13, 1976.
*1060 J. Michael Hart, Theus, Grisham, Davis & Leigh, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., James A. Norris, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
An information charged that Charles E. Overton and Billy Ray Jacobs committed aggravated burglary of the dwelling of Mary B. Davis in Monroe. La.R.S. 14:60. Overton was tried separately, found guilty and sentenced to twenty years at hard labor, the sentence to be executed by the Department of Corrections. Six assignments are argued by the defense on this appeal.

I.
The first assignment of error complains of the denial of a defense motion to suppress an alleged confession or inculpatory statement of the defendant and an identification at a pretrial photographic lineup wherein there were alleged irregularities. The latter contention of error in denial of the motion to suppress the line-up identification is not argued on appeal because the identification evidence was not introduced by the State. The defense does, however, rely upon its contention that it was error to deny the defense motion to suppress the alleged confession or inculpatory statement.
In the motion it is argued that the alleged inculpatory statement given by the defendant was obtained without first giving the warnings to which defendant was entitled. Later during the trial, the motion was amended to allege the involuntary character of defendant's confession.
Detective Andrew Milstead testified on direct examination that Overton's statement was taken on June 18, 1975 in the interrogation room of the Monroe Police Department in the presence of Detective Sergeant Joe Cummins. Overton was first advised of his rights and signed a waiver of rights form, which was witnessed by the officers. The statement was then recorded and later a typewritten transcription was prepared. Milstead testified that no promises of reward and no threats or duress were used to induce Overton to confess; and that he made the statement freely and voluntarily. Detective Cummins testified to the same effect.
Although he was not in the interrogation room when the statement was taken on June 18, Detective Leon Price testified he was present while Overton was questioned on that day and that no threats and no promises of reward or leniency were made to induce Overton to respond to interrogation.
By cross-examining these witnesses defense counsel sought to establish that on several occasions prior to the taking of defendant's statement during interrogation defendant had maintained his innocence, that he was finally administered a psychological stress evaluation (PSE) test by Chief Martin. The effect of this persistent police action was to create a climate of duress which was such that the confession should be considered involuntary and be suppressed. The defense seeks by this argument to intimate without proving that, among other things, something occurred during the PSE test which unduly influenced defendant to confess.
*1061 The record, however, does not support the defense theory. Each time Overton was questioned prior to the occasion when the recorded statement was made, he submitted freely and voluntarily with full knowledge of his rights.
There was no error in the ruling of the trial judge denying the motion to suppress. The only question involved is one of fact, and the ruling of the trial judge on such a finding is entitled to great weight. La.R.S. 15:451; State v. Ned, 326 So.2d 477 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976).

II.
In a motion for a speedy trial filed on September 9, 1975 defendant set forth that his case was set for trial on September 30, 1975, and that the victim of the burglary would not return from Texas to testify on the trial date, a fact which was known to the State. He anticipated, as a consequence, that the State would move for a continuance, which should be denied. Pretermitting the validity of this motion in anticipation, the issue of whether a speedy trial was denied is considered.
By this record it is established that the burglary occurred on May 30, 1975; defendant was arrested on June 18, 1975; he pled not guilty on June 30, 1975; and the case was then set for trial on September 30, 1975. Defendant filed a motion for preliminary examination on July 9, 1975. The motion was set for hearing on July 24, 1975, the hearing resulting in a finding of probable cause. A motion to suppress and to disclose information favorable to defendant was filed on July 30, 1975 and set for hearing on August 28, 1975, at which time both motions were denied.
When defendant appeared for trial on September 30, 1975 the State's attorney asked that the case be reset for October 13, 1975 in order that a case in which a mistrial had been ordered could be tried again. To this motion defense counsel objected, stating that his client, who was indigent and could not furnish bail was ready for trial. The trial judge, noting that this case was not the first on the docket, set the case for trial on October 13, 1975. On that day the matter proceeded to trial.
As the facts disclose, the length of time (4½months) from the offense to the date of trial was not excessive; the reason for the delay (preferential retrial of a mistrial, the position of this case on the docket and the hearings on defense motions) were in keeping with orderly procedure and the authority of the trial judge to control the docket; and the prejudice to the defendant, if any, as a result of the continuance from September 30 to October 13 has not been demonstrated. Thus defendant's assertion that he was denied a speedy trial is not satisfactorily established. La.Const. art. I, § 16 (1974); La.Code Crim.Pro. art. 578; State v. Howard, 325 So.2d 812 (La. 1976); State v. Stetson, 317 So.2d 172 (La.1975); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
The argument is also made that the State did not comply with Article 707 of the Code of Criminal Procedure when it failed to file a written motion for a continuance on September 30, stating its reasons for requesting the continance. The Article requires that "An application for a continuance shall be by written motion alleging specifically the grounds upon which it is based, and when made by a defendant, must be verified by him or his counsel's affidavit." As the argument is understood, if the State had been required to comply with Article 707 the grounds for its request would not have stood the test of validity, and the continuance would have been denied. The Code requirement of a written motion was apparently waived by the defense.
Because adequate grounds for the resetting or continuance existed, because another case was entitled to preferential hearing, the short delay until October 13 subjected defendant to no prejudice.
This contention is therefore without merit.

*1062 III.
During the trial the Assistant District Attorney was questioning Detective Milstead, and this question and answer ensued:
"Q. Did these descriptions that you received assist you in any way in your investigation?
A. Yes, sir, they did. We had had contact with the two subjects that were arrested on previous occasions."
From the argument of counsel it is apparent that the answer meant that the officers had previous contact with this defendant and his accomplice who they later arrested on the aggravated burglary charge which is the subject of this prosecution. Defense counsel objected and asked that the jury be retired. When the jury was retired, defense counsel argued that the reference to previous "contacts" with defendant was a reference to previous criminal conduct, which was grounds for mistrial, and he so moved. In reply the State argued that the reference to previous "contacts" was too vague to permit the inference that it referred to prior criminal conduct of defendant.
Insofar as pertinent here, Article 770 of the Code of Criminal Procedure provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . . .
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . . . . .
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
As a reading of Article 770 readily discloses, its provisions are not authority for defendant's contention that a mistrial should be ordered. The remark complained of was not made by the judge, district attorney or a court official. State v. Clark, 288 So.2d 612 (La.1974). Instead, the remark was made by a witnessa police officer testifying as a witness for the State.
Although no specific reference to these articles is made in the defense brief, the cases cited indicate that reliance is also placed on Articles 771 and 775 of the Code of Criminal Procedure. Article 771 reads:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
It is only that portion of Article 771 which refers to a remark or comment of a *1063 witness which could deprive the defendant of a "fair trial" that has application here. In this case, although the defendant moved for a mistrial, the record does not disclose that the trial judge admonished the jury with respect to Detective Milstead's remark. Application of Article 771, therefore, must depend upon whether Detective Milstead's remark was of such significance that it deprived this defendant of a fair trial.
Nor does Article 775 of the Code of Criminal Procedure mandate a mistrial in this instance. That article lists these grounds for mistrial:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
"A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial."
The only conceivable ground listed in Article 775 upon which the defense contention could rest is the broad ground referred to as "prejudicial conduct in or outside the courtroom [which] makes it impossible for the defendant to obtain a fair trial . . . ." This short, vague and indefinite remark that the officer had prior "contact" with defendant does not so necessarily, or even probably, refer to prior criminal conduct, a reference which may in some instances deprive the defendant of a fair trial. The nature of the "contact" is not made clear even by inference, and the range of possibilities is almost unlimited. As the State's brief suggests, the previous contact could have been personal, official as an informant, official as having seen the defendant from a distance on a number of occasions, as the result of parking ticket violation, etc.
In the light most favorable to the defendant, if a shaded reference to prior criminal activity could be inferred in these circumstances, this technical impropriety would not result in the denial of a fair trial or warrant a mistrial. There is no intimation whatever that the State was responsible for Detective Milstead's reference to prior "contacts," State v. Johnson, 261 La. 620, 260 So.2d 645 (1972); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); it was only Milstead's manner of explaining how the defendant's identity was established to his satisfaction. In that light, therefore, the references to prior contacts was relevant. And this Court recognizes that it is no objection that relevant evidence bearing on the question at issue also tends to show the commission of other crimes by the accused. State v. Hamilton, 307 So.2d 329 (La.1975); State v. Kinchen, 290 So.2d 860 (La.1974).
It should also be noted that Detective Milstead's answer was not responsive to the question and cannot be chargeable to the State. State v. Lewis, 315 So.2d 626 (La.1975).
Cases cited to support the defense contention are clearly distinguishable. In State v. Foss, 310 So.2d 573 (La.1975) a *1064 police officer gave an unresponsive answer to a question propounded by defense counsel which was held to warrant reversal. The answer was to the effect that defendant bragged that the police had referred to him as "the king pin of the burglary organization." That remark cannot be likened to the one in the case at bar. Moreover, the Foss opinion is not authoritative on this issue. Only two justices subscribed to the reasons expressed there.
In the other case relied upon, State v. Smith, 310 So.2d 580 (La.1975), the police officer testified that, on a date prior to the day on which the crime was committed, he followed defendant from the Capital Area Narcotics Control Office until defendant apparently "culminated a transaction." A reversal was held not to be warranted because of this remark in the Smith Case.
Mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. State v. Redfud, 325 So.2d 595 (La.1976); State v. Whitley, 296 So.2d 820 (La.1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972).
This assignment is without merit.

IV.
During cross-examination of Detective Milstead by defense counsel the witness was asked if he recalled what was said in the confession about a necklace. At this time the confession had not been introduced in evidence. The State objected that the best evidence of the confession's content was in the confession itself, and the trial judge so ruled. A protracted argument followed in which the trial judge repeatedly informed counsel that the best evidence rule was applicable to questions concerning the content of the confession. Despite the argument by defense counsel, no formal objection to the ruling was lodged.
In his argument defense counsel stated that his intention was to ascertain from the witness the circumstances surrounding the taking of defendant's confession. This, the trial judge explained, was not what defense counsel asked the witness; instead, the witness was asked if he recollected what was in the confession. The explanation continued:
"How the statement was taken, yes, and what his manner and demeanor during the course of the statement, yes. Now if you want to contradict what is in the statement by asking him if something was eliminated from the statement or are there any gaps in the statement, yes, but not what his recollection is of the contents of the statement."
Thereafter, defense counsel proceeded with the cross-examination along the lines suggested by the trial judge, using as a guide to questioning a transcribed copy of the confession which had been furnished by the State. When the questioning again sought to elicit the content of the confession from the witness the State renewed its objection that the statement was the best evidence of its content. Notwithstanding the persistence of the State's objection the trial judge allowed defense counsel to proceed. Consequently there is no substance to the defense contention that by the prosecutor's objections and the rulings of the trial judge his constitutional right to cross-examination was frustrated. La. Const. art. I, § 16; La.R.S. 15:275; La.R. S. 15:280.

V.
Objection by the defense was raised to the introduction of two photographs of the victim taken shortly after the battery upon her while she lay in a hospital bed fully clothed. The pictures do portray bruises on her face and bruises, lacerations and bandages on the lower parts of her arms. They are not, however, properly categorized as dramatically gruesome photographs; nor are they designed *1065 to unduly appeal to the emotions or sympathy of the jury. The photographs are relevant to corroborate and strengthen the victim's testimony that her assailants beat her with a pistol, and as such they are admissible, for she was the only eyewitness to the crime. Their probative value is established, but their prejudicial effect is questionable. State v. Holland, 297 So.2d 413 (La.1974); State v. Gibson, 271 So.2d 868 (La.1973); State v. Hall, 256 La. 336, 236 So.2d 489 (1970).

VI.
It is asserted by the defense in support of this assignment that the trial judge erred in overruling a motion for a new trial which complained that permitting the jury to view the photographs of the victim in its deliberations, out of the presence of the defendant was improper.
After closing argument the Assistant District Attorney requested that the photographs referred to in Part V, above, be furnished to the jury for viewing in open court. The photographs had been introduced in evidence but had not been viewed by the jury. The trial judge denied this request, but later (it appears informally) advised counsel for the State and the defense that the photographs would be sent into the jury room for viewing by the jurors during their deliberations. No contemporary objection was made to this procedure.
Pretermitting determination of whether defense counsel was informed in advance and had an opportunity to object to the procedure, we are nevertheless satisfied that the action of the trial judge was authorized by Article 793 of the Code of Criminal Procedure:
"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
As the article reads, the matter is one to be decided "in the discretion of the court." In this situation, where the jury had not yet viewed the photographs in evidence, it was more orderly to permit the photographs to be sent to the jury room than to conduct an unorthodox proceeding for this purpose in open court after oral arguments. La.Code Crim.Proc. art. 765. There is no abuse of discretion in this ruling.
Since the motion for a new trial otherwise reurges issues already disposed of by the Court in other parts of this opinion, they need not be reconsidered here.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs.
TATE, J., concurs, but with reservations as to overbroad assertions in parts III and VI of the opinion.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant in his application for rehearing submits that paragraph VI of the original petition contains factual and legal errors.
Paragraph VI of the original petition concerns a request by the jury to the judge, after deliberations had begun, through a deputy sheriff, to view two photographs which had been admitted in evidence, but which had not been seen by the jury during the trial.
The judge's per curiam to Assignment of Error No. 6 states that the district attorney requested, after the completion of closing arguments, permission to allow the jury to *1066 view the two photographs. Defendant objected because the case was closed. The objection was sustained. The judge considered that the jury was entitled to inspect any objects received in evidence, if it wished, in the jury room. The per curiam recites that the judge later informed both counsel that the jury had requested to view the photographs, "and that the request would be granted." The per curiam states that the defendant made no objection.
We need not decide whether the defense waived any right by the failure to object when informed by the trial judge, in the hall or at a concession stand, while the jury is deliberating, that the judge has sent or will send evidence in to the jury.
Defendant relies on Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed. 2d 1 (1975). There the United States Supreme Court, in an opinion by Chief Justice Burger, reversed a conviction because the jury had communicated in writing with the trial judge about whether the judge would accept a verdict of guilty with "extreme mercy." The United States Supreme Court stated that the jury's request should have been answered in open court:
". . . Federal Rule Crim.Proc. 43 guarantees to a defendant in a criminal trial the right to be present `at every stage of the trial including the impaneling of the jury and the return of the verdict.' Cases interpreting the Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded. See, e.g., United States v. Schor, 418 F.2d 26, 29-30 (C.A.2 1969); United States v. Glick, 463 F.2d 491, 493 (C.A.2 1972)." 422 U.S. 35, 39, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1, 6.
Federal Rule of Criminal Procedure 43 parallels our Code of Criminal Procedure art. 831. No Louisiana cases have been found which relate directly to the facts of the case before us. We find Rogers v. United States, supra, persuasive. If the trial judge in Louisiana communicates with the jury, he should do so in open court. The defendant and his attorney should be present. Even when the request is simple request to review documents in evidence, that request should not be granted in the absence of defendant and counsel.
Since, however, there is no violation of a specific statute, nor of a constitutional right, we have examined the record to determine what prejudice, if any, was suffered by the defendant.
The argument on the motion for a new trial was that the photographs were highly prejudicial, gruesome, designed to inflame the emotions of the jury, and were of no probative value.
We need not determine whether the photographs were of any probative value. (The trial judge admitted the photographs "in order to depict the true situation and not colored by the personal excitement or animosity that any of the witnesses might have.").
The pictures are in the record before us and are neither gruesome nor inflammatory. Two in number, about three inches square, they are color Polaroid photographs of low quality. The subject in each picture is an elderly lady in a hospital bed with the lower part of her body covered with bedclothes and the upper part of her body dressed in a short sleeved housecoat or house dress. She was wearing glasses and there are spots of discoloration around one eye. There are some bandages on each arm, and there are discolorations apparent on each hand and lower arm.
If the trial judge had made known the jury's request in open court, we find no reason why it should not have been granted, and no prejudice to the defendant.
*1067 Assignment of Error No. 6 is without merit.
Rehearing denied.
SUMMERS, J., concurs.