443 So.2d 648 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Keith DELAHOUSSAYE, Defendant-Appellant.
No. CR83-366.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*649 David L. Carriere, Wm. Tracy Barstow, Opelousas, for defendant-appellant.
Morgan J. Goudeau, III, Dist. Atty. and Donald Richard, Asst. Dist. Atty., Opelousas, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
The Grand Jury of St. Landry Parish indicted the defendant, Keith M. Delahoussaye, for first degree murder of Paul Brasseaux, Jr., a violation of LSA-R.S. 14:30. The defendant was tried by a twelve member jury and convicted on April 24, 1981. In a separate sentencing hearing the jury recommended life imprisonment without the benefit of parole, probation or suspension of sentence. The defendant reserved seven assignments of error. Because we find merit in assignment of error two and reverse the defendant's conviction and sentence, the remaining assignments will not be considered.
Assignment of error two asserts that the trial court erred in failing to grant defendant's motion for a mistrial made during the jury selection. This assignment was reserved when it came to the defendant's attention (during jury selection) that the jury venire was exposed to a highly prejudicial and inflammatory religious invocation in the courtroom the morning of jury selection.
Four jurors had been selected and sworn before the noon recess. After the noon recess it was made known to the defendant that at approximately 9:00 a.m., before the arrival of his two defense counsel, a local religious minister delivered an invocation quoting scripture to the jury venire. Defendant was not told the exact content of the scripture verse but was told it was something in the nature of "a death for a death". Because of the sensitivity of a first degree murder trial the defendant moved for a mistrial. Before ruling on the motion, the court recalled the minister to have him repeat what he had said to the jury venire since it was not recorded.
The record reflects that the local minister writes a series of columns in one of the local newspapers advocating the death penalty for first degree murder. On the morning of the defendant's trial, the minister walked into the courtroom behind the judge, stood near him at the bench, and read the following biblical scripture: Book of Numbers, 35:29-34; Romans, 13:1-7. For the record, he read aloud the scripture verses he had earlier read to the jury venire.

"And these things shall be for a statute and an ordinance to you throughout your generations and all your dwellings. And if anyone kills a person the murderer shall be put to death on the evidence of witnesses but no person shall be put to death on the testimony of one witness. Moreover, you shall accept no ransom for the life of a murderer. *650 He is guilty of death and he shall be put to death."

* * * * * *
"You shall not defile the land in which you live in the midst of which I dwell, for blood pollutes the land and no expiation can be made for the land except for the blood shed in it, except by the blood of him who shed it. It says I dwell in the midst of the people."
* * * * * *
"Let every person be subject to the governing authorities, for there is no authority except from God and those that exist have been instituted by God. Therefore, he who resists the authorities resist what God has appointed. And those who resist will incur Judgment. For rulers are not a terror to good conduct but to bad. Would you have no fear of him who is an authority, then do what is good and you will receive his approval, for he is God's servant for your good, but if, you do wrong, be afraid for he does not bear the sword in vain. He is the servant of God to execute his wrath on the evid [sic] doer. Therefore, one must be subject, not only to avoid God's wrath, but for also the sake of conscience. For the same reason, you are to pay taxes to the authority as ministers of God attending to this very thing."
He also gave an explanation of the scripture to the jury venire. To the best of his recollection, his explanation was the following:
"I'll touch that in just two seconds. I'll make it all brief. And then the second portion of Scripture that I read was with regard to the fact that we as subjects of the State of Louisiana are to abide by its laws and that the civil magistrate is to bear the sword not in vain but to execute justice on the evil doer. And so the remarks that came in the prayer subsequent to that, were basically that the Lord would give us the wisdom and grace to adjudicate this matter properly as would please him and not us. And secondly, that we would also move forth in seeking his mercies that are offered to us in the Scripture because we have on the one hand the justice of God that is expressed very clearly and on the other hand, the mercy of God expressed very clearly and that mercy is offered to all of us if we would just humble ourselves before him in his offered sacrifice."
After the taking of this testimony, the trial court called four prospective jurors at random to determine what effect, if any, the invocation had on them. The trial court and defense counsel then examined four prospective jurors. Of the four, three were present when the minister delivered his comments. All three thought he was speaking with the judge's permission. All three were strongly impressed that "a man of the cloth" was advocating death and punishment. One juror stated that the minister had definitely influenced him. At the conclusion of their testimonies, the trial court denied the motion for a mistrial. The defendant then moved for a continuance or a recess long enough to take writs on this issue, which was also denied by the trial court.
A defendant's right to be tried by an impartial jury is guaranteed by the Constitutions of the United States and Louisiana. The Sixth Amendment of the United States Constitution reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." (Emphasis added)

Article I, sections 16 and 17 of Louisiana's Constitution reads:

"Section 16. Every person charged with a crime is presumed innocent until *651 proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf." (Emphasis added)

"Section 17. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict... The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury." (Emphasis added)

The right to be tried by a fair and impartial jury is basic to our criminal justice system. This is the defendant's guarantee to a fair and impartial trial by a jury of his peers. The failure to accord an accused a fair hearing violates even the minimal standards of due process. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The integrity of jury proceedings must not be jeopardized by unauthorized invasions. Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The theory of our system is that the conclusions to be reached in a case will be induced only by competent evidence and argument in open court, and not by any outside influence, whether of private talk or public print. Patterson v. Colorado ex rel. Attorney General, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907).
The trial court should take such steps to protect the jury from prejudicial influences that frustrate due process and invite constitutional risks and hazards. The jury must give the defendant his day in court with a detached atmosphere prevailing and the trial court should invoke the proper measures to insure this protection.
In State v. Shoemake, 78 So. 240, 143 La. 65, (La.1918), the accused was convicted, without capital punishment, of murder. Court was opened with a prayer by a minister of the gospel in the presence of the jury. The Supreme Court commented: "In opening the court with prayer there may be no harm, although we have never heard of such a thing being done before ...." (The prayer was not recited in the case.) The Supreme Court originally reversed the defendant's conviction, but on rehearing it affirmed since the defendant could not show prejudice. However, it is recognized that the court can assume an implied bias. In Justice O'Connor's concurring opinion in Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), she observed:
* * * * * *
"Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it.
* * * * * *
"I am concerned, however, that in certain instances a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice. While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias.

* * * * * *

"Because there may be circumstances in which a post-conviction hearing will not be adequate to remedy a charge of juror bias, it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights ...."
In the present case, the only jurors who were examined as to the invocation were the four prospective jurors mentioned above and none were selected to serve on *652 the jury. Defense counsel and the trial court both felt that voir dire examination concerning the invocation would emphasize any influences already made by the invocation. Thus, in effect the accused was deprived of voir dire examination to show any prejudicial influences. We note of importance that a total of sixteen jurors had been called for voir dire examination before the noon recess, from which four were selected and sworn. To deprive an accused of his right to voir dire examination is in direct contravention to his constitutional rights. This practice would nurture and sanction biased jurors and strip the criminal justice system of its impartial cloak. The accused, regardless how heinous the crime, is entitled to be tried by a fair and impartial jury. The purpose of the voir dire examination is to seek such a jury. State v. Murray, 375 So.2d 80, (La.1979).
The trial court was unaware of the content of the invocation until it was delivered. While the trial court did not approve of the content, it did not find the invocation prejudicial. We disagree. The scripture verses are highly violative to a fair and impartial trial. The accused is described as a condemned killer who must be put to death. There is no presumption of innocence which is axiomatic to our criminal justice system. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895).
A mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. State v. Overton, 337 So.2d 1058 (La.1976). We find that substantial prejudice resulted to the defendant in depriving him of a reasonable expectation to a fair trial. LSA-C.Cr.P. Art. 775 provides:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.

Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771...." (Emphasis added)

We find that the invocation constituted grounds for a mistrial as intended by Art. 775 in that it was prejudicial conduct in the courtroom making it impossible for the defendant to obtain a fair trial.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are set aside and the case is remanded for a new trial.
REVERSED AND REMANDED.