STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-969

STATE OF LOUISIANA

VERSUS

JONATHAN JACITO FRANK

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 30367-09
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Phyllis M. Keaty, Judges.

AFFIRMED.

**John F. DeRosier**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**Counsel for Appellee:**
**State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**Post Office Box 53733**
**Lafayette, Louisiana 70505-3733**
**(337) 237-6841**
**Counsel For Defendant/Appellant:**
**Jonathan Jacito Frank**

**KEATY, Judge.**

Defendant, Jonathan Jacito Frank, appeals his conviction and sentence for aggravated rape. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

At approximately 2:00 a.m. on September 10, 1994, the victim, A.W.,[1] was sleeping at her apartment when she awoke to a knife pressing against her neck. As she attempted to fight the perpetrator, he struck her face and eye and fractured her nose. He also cut her hand as she tried to push him away. Despite her efforts, he forced the victim to have sex with him. After he left her apartment, the victim reported the rape to the police.

Defendant, Jonathan Jacito Frank, was subsequently indicted on September 17, 2009, for aggravated rape, a violation of La.R.S. 14:42. At trial, A.W. could not positively identify Defendant as the rapist although she described the rapist as a dark-skinned, black male. On May 15, 2014, following a jury trial, he was convicted as charged. Defendant then filed a motion for a new trial which was subsequently denied at a May 22, 2014 hearing. The trial court thereafter sentenced Defendant to life imprisonment without the possibility of parole, probation, or suspension of sentence.

Defendant appeals his conviction, assigning the following two errors:

(1)  When viewed under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), the evidence in the instant case was insufficient to prove all of the elements required for aggravated rape; and

(2)  The trial court erred in denying Defendant's motion for a new trial.

---

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity as she was a minor at the time of the offense.

**DISCUSSION**

I.    <u>Errors Patent</u>

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent.

Louisiana Code of Criminal Procedure Article 831 provides in pertinent part:

> A.    Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
>
> . . . .
>
> (5)  In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced[.]

In this case, the record shows that the jury viewed the State's exhibits without Defendant being present. As a result, defense counsel objected and moved for a mistrial, arguing that Defendant was prejudiced. Defendant's counsel alleged that since Defendant re-entered the courtroom from the back and in the presence of the jury, he could be prejudiced if the jury realized that he was incarcerated. Defense counsel stated that they did their best to minimize any prejudice by walking Defendant into the courtroom ahead of uniformed security.

The trial court denied the mistrial based in part on the bailiff's testimony at the hearing that Defendant never re-entered the courtroom in front of the jury. The trial court further stated:

> I don't see any prejudice whatsoever. The jury has had an opportunity to see how we've conducted ourselves throughout this proceeding and we've made a particular effort not to have them be made aware that your client was incarcerated. He walked out of the courtroom on several occasions when we interviewed jurors, assisted by you, and in my explanation to them I explained that he was outside visiting with his attorney.

In *State v. Medious*, 98-419, p. 5 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1089-90, *writ denied*, 98-3201 (La. 4/23/99), 742 So.2d 876, the defendant argued that the trial court violated La.Code Crim.P. art. 831(4) when it determined, "out of the presence of the defendant and his attorney, that the jury, which had already retired to deliberate, could view State Exhibit nos. 4 and 5[.]" The fifth circuit noted that the defendant and his counsel were "present during all rulings concerning the admissibility of the state's evidence." *Id*. at 1090. It further noted that "the defendant's trial attorney verbally stated that the defense had no objections with regards to the admission of any of the state's eight exhibits into evidence." *Id*. The fifth circuit stated:

> In *State v. Overton*, 337 So.2d 1058, 1066 (La.1976) on rehearing, the Supreme Court discussed whether LSA-C.Cr.P. art. 831 required the presence of a defendant and his attorney when a trial judge ruled on whether a deliberating jury would be allowed to view two photographs that the state had entered into evidence, and stated as follows:
>
>> . . . If the trial judge in Louisiana communicates with the jury, he should do so in open court. The defendant and his attorney should be present. Even when the request is [a] simple request to review documents in evidence, that request should not be granted in the absence of defendant and counsel.
>
> However, the court went on to explain that because there was no violation of a specific statute, nor of a constitutional right, the appropriate inquiry was whether the defendant had suffered any prejudice. *Id*.

*Id.* (alteration in original).

The *Medious* court held that the defendant failed to complain or show that he was prejudiced when the trial court ruled in the absence of him and his attorney regarding the jury's request to view two state exhibits. *Id*. Accordingly, the fifth circuit found that the trial court was without error. *Id*.

Just like in *Medious*, Defendant and his attorney in the instant case were present when the exhibits were admitted into evidence, and Defendant failed to allege or prove that he was prejudiced. The record also fails to support Defendant's allegation that the jury saw him enter the courtroom from the rear, implicating that he was incarcerated at the time of trial. Therefore, we find that this error is harmless.

## II.    First Assignment of Error

In his first assignment of error, Defendant argues that the evidence was insufficient to prove all of the elements required for aggravated rape. He alleges that since the State's case relied mostly upon circumstantial evidence, as there was no eyewitness identification, the State was required to negate any reasonable probability of misidentification which it failed to do. He further argues that the State failed to exclude every reasonable hypothesis of innocence.

Louisiana Revised Statutes 14:42 provides that:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

. . . .

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

In *State v. Miller*, 98-1873, p. 5 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 120, *writ denied*, 99-3259 (La. 5/5/00), 761 So.2d 541, this court noted that the applicable standard of review utilized regarding an insufficiency of evidence claim as follows:

[A]fter viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). The role of the factfinder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

In *State v. Ortiz*, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352 (1998), the Louisiana Supreme Court stated:

When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. *State v. Porretto*, 468 So.2d 1142 (La.1985).

In the present case, the record shows that physical evidence rather than circumstantial evidence was placed before the jury. This is supported by the trial court testimony of LeAnne Suchanek, who qualified as an expert in DNA analysis. She testified that, with a 99.9 percent degree of scientific certainty, Defendant was the source of the DNA found in the sperm swabbed from A.W.'s vagina. Suchanek testified that "the match statistic for this case was approximately 1 in 184 trillion[,]" unless, of course, Defendant had an identical twin. In support of his argument that the State failed to negate the likelihood of misidentification, Defendant argues that there was no evidence introduced regarding whether Defendant had an identical twin. We find that there is nothing in the record, however, indicating the existence of an identical twin.

Defendant argues that certain facts in the instant case support a finding of insufficient evidence. Specifically, Defendant contends that no additional testing was performed on the subject samples despite advances in DNA analysis. Our review of Suchanek's testimony indicates that she agreed that the last testing of Defendant's and the victim's DNA was in August 2009. She further testified that DNA analysis is a rapidly evolving science. There is nothing in the record or Defendant's brief, however, indicating that he has contested the validity of the DNA test results implicating him in the rape.

Defendant contends that Suchanek testified to an unusual finding in the DNA testing. Our review of her testimony indicates that Suchanek revealed that her unusual finding was nothing more than something with the print dye noted by the software and flagged. She further testified that her supervisor checked her DNA analysis results.

Defendant contends that Suchanek testified that notwithstanding a DNA match, other people could be tested. Despite her testimony, Defendant alleges that none of his relatives were tested. Our review of Suchanek's testimony shows that she agreed that none of Defendant's relatives were tested. Nevertheless, she had previously testified that Defendant's DNA matched the DNA found on the victim to a scientific certainty. Suchanek testified that unless Defendant had an identical twin, the match statistic was approximately 1 in 184 trillion.

Finally, Defendant alleges that Suchanek testified that she was unable to guarantee a sample mix-up. Based upon our review of her testimony, Defendant mischaracterizes Suchanek's statement. Specifically, Suchanek testified that in 2009, she obtained the victim's DNA sample in order to ensure that a mix-up of the DNA samples taken from the victim after the rape in 1994 did not occur. This

6

2009 sample verified that those samples taken in 1994 were from the victim according to Suchanek's testimony.

Based on the above, we find that the State met its burden of proof in this case. Although there was no eyewitness identification, the DNA analysis established Defendant's guilt beyond a reasonable doubt.

### III. Second Assignment of Error

In his second assignment of error, Defendant contends that the trial court erred by not granting his motion for a new trial. In his motion, Defendant alleged that some of the jurors heard a derogatory comment regarding him which was made by the trial court's bailiff.

When Defendant filed his motion for a new trial, it was governed by La.Code Crim.P. art. 851, which provided:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> The court, on motion of the defendant, shall grant a new trial whenever:
>
> . . . .
>
> (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

At the outset, we note that in *State v. Guillory*, 10-1231 (La. 10/8/10), 45 So.3d 612, the supreme court noted that previous jurisprudence conflicted as to whether a trial court's ruling on a motion for new trial under La.Code Crim.P. art. 851(5) presented a question of law reviewable under an abuse of discretion standard. The supreme court stated that some rulings held that the grant or denial of a new trial under subparagraph five was unreviewable. *Id*. Thus, the supreme

court in *Guillory* partially overturned this line of jurisprudence when it determined that a grant or denial of a motion for new trial pursuant to La.Code Crim.P. art. 851(5) presented a question of law that was subject to appellate review for abuse of discretion. *Id.*

In the instant case, a hearing occurred on May 22, 2014, to address Defendant's motion for a new trial. At the hearing, Patricia Cole testified that she had been dating Defendant for approximately one year. She testified that during jury selection in the instant matter, she was standing outside of the courtroom when she heard William "Bill" Domingue, Sr., the trial court's bailiff, discussing the case. Cole testified that when an attorney asked the bailiff about the proceeding taking place inside the courtroom, the bailiff told the attorney that Defendant was "'cocky and bold and it's going to hit him right there in the face.'" Cole testified that this exchange occurred during a break on the first day of jury selection when the potential jurors were standing outside of the voir dire courtroom. She testified that five other people were standing close to the bailiff when he made his comments and that three of those five individuals were subsequently selected to be on the jury.

At that hearing, Domingue's testimony indicates that he agreed with Cole in that he had a conversation with another lawyer who was trying a civil case in another courtroom. Domingue testified, however, that they simply exchanged information regarding what type of cases were being tried. Throughout his testimony, Domingue denied making a statement that Defendant was cocky and that it was going to hit him in the face, as he was aware of the prohibition against discussing a case outside of the courtroom.

The Deputy Clerk of Court, Kay Miller, testified that she was the minute clerk assigned to Defendant's trial. Miller testified that when the trial court asked the jurors the following day whether they had overheard any inappropriate comments made outside of the courtroom, there was no response from the jury. She testified that she had memorialized the trial court's admonishment regarding inappropriate comments in the May 14, 2014 minute entry.

At the hearing, the trial court noted that it found Cole's testimony questionable given her bias in favor of her relationship with Defendant. The trial court stated that it was aware of Domingue's "understanding of what his role is in the court system, which includes not commenting" as Cole testified. As a result, the trial court denied Defendant's motion for a new trial.

Based on the above, we find that there is no merit to this assignment of error, as Defendant has failed to show that the trial court abused its discretion.

## DECREE

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**